TERRI F. LOVE, Judge.
|! This appeal arises from the Crosby plea and sentencing of Leon Howard, who reserved his right to appeal the trial court judge’s ruling on his motion to suppress, which the trial court judge previously denied. We find that the trial court judge erred in denying the motion to suppress because the New Orleans police officers’ entry into his home was unjustified because no exigent circumstances existed and the subsequently issued search warrant was partially based on information discovered during the illegal entry. Therefore, the trial court judge erred in not suppressing the evidence found in Leon Howard’s home. Accordingly, we reverse the trial court judge’s ruling on the motion to suppress the evidence, vacate Leon Howard’s guilty pleas and sentences, and remand the case for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Leon Howard was charged by bill of information with possession with intent to distribute marijuana, in violation of La. R.S. 40:966(A)(1), and possession of a firearm by a convicted felon, in violation of La. R.S. M^.l.[1] The record does not indicate if or when an arraignment was held.[2] However, both Mr. Howard and 12the State agree that on or around February 29, 2011, Mr. Howard entered a plea of not guilty.
Subsequently, Mr. Howard filed several pretrial motions including a Motion for Preliminary Hearing and a Motion to Suppress the Evidence. The trial court judge found probable cause to substantiate the charges and denied Mr. Howard’s Motion to Suppress. Mr. Howard filed an application for supervisory writ seeking review of the denial of the Motion to Suppress. This Court denied Mr. Howard’s supervisory writ application due to an adequate remedy on appeal, if convicted.
*834 At trial, Mr. Howard withdrew his prior plea and entered into a plea bargain with the State, whereby Mr. Howard agreed to plead guilty to the charge of possession with the intent to distribute marijuana and to the lesser charge of illegal carrying of a firearm, in violation of La. R.S. 14:95(A), in exchange for the State’s recommendation of a five-year suspended sentence on the drug charge and a six-month suspended sentence on the firearm charge.[3] Upon entering his guilty plea, Mr. Howard reserved his right to appellate review of the trial court judge’s ruling on his Motion to Suppress pursuant to State v. Crosby, 338 So.2d 584 (La.1976).
The trial court judge accepted the plea and sentenced Mr. Howard to five years at hard labor for the charge of possession with intent to distribute marijuana, with credit for time served. The trial court judge suspended the five-year sentence, placed Mr. Howard on active probation for five years, assessed a $1,000.00 fine, and $191.50 in court costs. The trial court judge also accepted the plea for the illegal carrying of a firearm charge and sentenced Mr. Howard to six months at Orleans Parish Prison, with credit for time served. The trial court judge suspended lathe six-month sentence, placed Mr. Howard on six months inactive probation, and assessed a $149.00 fine.[4] The trial court judge ordered that the sentences for both charges run concurrently with each other and any other sentences. Mr. Howard’s timely appeal followed.[5]

TESTIMONY

At the hearing on Mr. Howard’s Motion to Suppress, the only witness to testify was Detective Andrew Roccaforte of the Narcotics Division of the New Orleans Police Department (“NOPD”). Detective Roccaforte stated that he has been a narcotics detective for almost fifteen years and approximated that he conducted thousands of narcotics investigations.
Detective Roccaforte testified that on August 30, 2010, he received information from a confidential informant (“Cl”) that a twenty-seven year old black male named “Leon,” later identified as Mr. Howard, was storing marijuana and cocaine at 423 South Salcedo Street. The Cl stated that Mr. Howard drove a white Cadillac Esca-lade or Cadillac truck and used the vehicle to deliver drugs. The Cl also provided the license plate of the vehicle. Detective Roccaforte testified the Cl is reliable, that he used the Cl for narcotic investigations since 2004, and made numerous arrests and convictions based on tips provided by the CI.
*835 After receiving this information, on September 1, 2010, Detective |4Roccaforte and a few members of his unit set up surveillance on 423 South Salcedo Street. The NOPD officers were all in separate unmarked police cars and in plain clothes. Detective Roccaforte stated that during the surveillance, at approximately 5:80 p.m., he observed Mr. Howard drive up in a white truck, exit the driver’s side of the vehicle, and enter the South Salcedo Street residence. An hour later, Detective Roc-caforte observed Mr. Howard come out of the residence and drive off in the truck. Detective Roccaforte and his team followed Mr. Howard and observed him stop in the 3200 block of Palmyra Street. Subsequently, an unidentified black male, who was sitting on the porch of a nearby house, entered the passenger side of the truck. A few seconds later Detective Roccaforte observed the black male exit the truck. Detective Roccaforte testified that although he could not see inside the truck, the brief exchange between Mr. Howard and the unidentified black male was suspicious.
Detective Roccaforte continued to follow Mr. Howard and observed Mr. Howard stop the truck at a playground at Baudin Street and South Clark Street. On cross-examination, Detective Roccaforte testified that the playground was known for drug activity. He then observed a young black male, approximately twenty years old, walk from the park bleachers and enter the passenger side of the white truck. Thirty seconds later the black male exited the truck and returned to the park bleachers where other men were sitting. Detective Roccaforte testified that based on his past experience in narcotics investigation and the brevity of their encounter, he believed the men engaged in a drug deal.
Thereafter, Mr. Howard drove off and two plain clothes NOPD officers, Detective Chris Henly and Sergeant Jeff Sislo, entered the park with their police credentials displayed to attempt to stop the individual who exited the truck. | sHowever, the young black male fled and successfully evaded the NOPD officers. While fleeing from the NOPD officers, the black male dropped a clear plastic bag containing vegetable matter. The vegetable matter later tested positive for marijuana.
Detective Roccaforte stated on cross-examination that he did not observe a hand-to-hand transaction between Mr. Howard and the second suspect, but again stated that the mannerisms he observed, as well as the short time frame of the exchange was “very, very consistent with a drug dealer making drops,” and was “the reason for the investigation on the individual in the park.”
Detective Roccaforte testified that because the young black male had escaped and there were several people in the park that observed the subject run from the officers, he became concerned that the investigation could be jeopardized. However, Detective Roccaforte stated that he did not observe the individual use his cell phone.
Mr. Howard returned to the neighborhood near the South Salcedo Street residence and began circling the block.[6] When Mr. Howard stopped the truck on Baudin Street, Sergeant Sislo pulled up behind him in an unmarked Crown Victoria. Subsequently, Mr. Howard “kind [of] sped off,” turned on Banks Street, and continued towards Jefferson Davis Park *836 way. However, Sergeant Sislo eventually stopped Mr. Howard at South Rendon and Banks Street. Detective Roccaforte testified that Mr. Howard was then advised of the nature of their investigation, handcuffed, and placed in the back of the police car.
Thereafter, the NOPD officers relocated to 428 South Salcedo Street with |fiMr. Howard to secure the residence. Detective Roccaforte testified that it was their intention to use Mr. Howard’s keys to open the front door of the residence. However, when Mr. Howard refused to indicate which key would unlock the door, another NOPD officer, Detective Burke, kicked in the front door so they could enter.[7] Detective Roccaforte stated that it was important not to waste time, as he was concerned about someone inside the house destroying evidence. He stated that at no point in conducting their surveillance did the NOPD officers see anyone go inside the South Salcedo Street residence other than Mr. Howard. Detective Roccaforte further admitted that prior to forcing entry, neither he nor the other NOPD officers heard anyone inside the South Salce-do Street residence or anyone fleeing from the residence. Once inside the residence, the NOPD officers observed in plain view, a large amount of marijuana inside an open shoe box, two digital scales, and sandwich bags on top of a bedroom dresser.
After confirming no one was inside the residence, the NOPD officers asked Mr. Howard if they could have his consent to search the residence. Mr. Howard declined, and Detective Roccaforte proceeded to prepare an application for a search warrant. At 8:58 p.m., magistrate commissioner John Blanchard reviewed the application and authorized the warrant to search the South Salcedo Street residence.[8] Detective Roccaforte returned to the residence to execute the search warrant. The NOPD officers found a loaded 9 millimeter handgun with an extended magazine and $243.00 inside the top drawer of the same bedroom dresser where the NOPD officers observed the marijuana. After running the serial numbers, the NOPD officers discovered that the handgun was reported stolen. Mr, |7Howard was subsequently arrested for possession of marijuana with intent to distribute and possession of a firearm by a convicted felon.[9] A field test confirmed that the substance found on the bedroom dresser was marijuana.
On cross-examination, Detective Rocca-forte testified that the information the informant provided was neither sufficient to obtain a search warrant nor probable cause for an arrest. He stated that to establish probable cause he either needed to set up a “controlled buy” or surveillance. On redirect, Detective Roccaforte testified that the application for the search warrant was based on the reliable informa *837 tion provided by the Cl as well as his own observations and belief that Mr. Howard was engaging in illegal drug deals. However, his testimony also indicated that the search warrant was based, in part, on the evidence the NOPD officers discovered in securing the residence. Detective Rocca-forte testified that the application he presented to the magistrate referenced the “one pound of vegetable matter, sandwich bags, and a digital scale lying on the bedroom dresser” that the NOPD officers observed in plain view after entering Mr. Howard’s home.

ERRORS PATENT

The record does not show that Mr. Howard was formally arraigned. However, La.C.Cr.P. art. 555 provides that “[a] failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.” Here, although Mr. Howard did not go to trial on April 2, 2012, the record does not reflect that Mr. Howard made any objection regarding the lack of | ^arraignment. Further, the April 2, 2012 transcript provides that Mr. Howard withdrew his prior pleas of not guilty before pleading guilty to the charges set forth in the amended bill of information. The parties do not dispute that Mr. Howard formerly pled not guilty. Therefore, any error with regard to the trial court judge’s failure to arraign Mr. Howard was waived and/or cured by Mr. Howard’s subsequent Crosby plea. As such, no action is required by this Court. See State v. Brown, 620 So.2d 508, 511-12 (La.App. 4th Cir.1993) (finding that the failure to arraign the defendant was patent error but was harmless, where defendant never objected to the lack of arraignment and did not urge it as grounds for reversal on appeal); State v. Keller, 12-0382, p. 4 (La.App. 4 Cir. 12/12/12), 106 So.3d 696, 699 (finding that no action was required by the appellate court when the defendant made no objection to not being arraigned).

MOTION TO SUPPRESS

As his sole assignment of error, Mr. Howard contends that the trial court judge erred in denying his Motion to Suppress the evidence. Specifically, Mr. Howard asserts that the NOPD officers did not observe him engage in illegal activity; therefore, they lacked sufficient cause to stop and arrest him. Mr. Howard also contends that the search of his home was unlawful because no exigent circumstances existed to justify the warrantless entry. He further avers that the evidence should be suppressed because the application for the search warrant contained information gleaned from the NOPD officers’ allegedly illegal entry into Mr. Howard’s home.
“The trial court is vested with great discretion when ruling on a motion to suppress” and, consequently, the ruling of a trial judge on such a motion will not be disturbed absent an abuse of that discretion. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. “[T]he district court’s findings of fact on a motion to suppress” are reviewed “under a clearly erroneous standard,” and its “ultimate determination of Fourth Amendment reaspnableness is reviewed de novo. ” State v. Pham, 01-2199, p. 3 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. U.S. Const. Amend. IV; La. Const. Art. 1, § 5; State v. Francis, 10-1149, p. 4 (La.App. 4 Cir. 2/16/11), 60 So.3d 703, 708. However, “[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is commit *838 ting, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.” La.C.Cr.P. art. 215.1(A); see also, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983); State v. Fauria, 393 So.2d 688, 690 (La.1981).
In State v. Dank, 99-0390, pp. 4-5 (La.App. 4 Cir. 5/24/00), 764 So.2d 148, 155, this Court explained the factors a reviewing court must consider in determining whether an investigatory stop was permissible. This Court stated:
“Reasonable suspicion” to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La.App. 4 Cir. 3/17/99), 731 So.2d 414, 416, writ denied, 99-0969 (La.9/17/99), 747 So.2d 1096. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, P. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. See State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99), 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914; State v. Mitchell, 98-1129, p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299; State v. Keller, 98-0502, p. 2 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78. In reviewing the totality of the circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254.

Id.

“Under certain circumstances an informant’s tip can provide reasonable cause to detain and question a suspect.” State v. Rodriguez, 99-914, p. 6 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 17. Generally, the informant’s tip must contain predictive information regarding the future behavior of the reported suspect, and the tip must be corroborated. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). See also State v. Robertson, 97-2960 (La.10/29/98), 721 So.2d 1268. In applying the totality of the circumstances analysis, independent corroboration by police investigation of the details of an informant’s tip is valuable. State v. Melancon, 03-514, p. 6 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 229. Even a non-predictive anonymous tip combined with police |n corroboration or independent police observation of unusual suspicious conduct can give police the necessary reasonable suspicion to temporarily detain the suspect. Robertson, 97-2960, p. 5, 721 So.2d at 1270-72; State v. Triche, 03-149, p. 6 *839 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 85. “[I]f the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.” Alabama, 496 U.S. at 330, 110 S.Ct. 2412, 110 L.Ed.2d 301.
The State contends that it was reasonable for Detective Roceaforte to believe that Mr. Howard was engaged in criminal activity based on his observing the short alleged exchanges between Mr. Howard and the two other black males. The State cites State v. Fearheiley, 08-0307 (La.4/18/08), 979 So.2d 487, in support.
In Fearheiley, an officer observed the defendant engage in an apparent hand-to-hand transaction, but was unable to determine what was exchanged. 08-0307, p. 2, 979 So.2d at 488. The exchange lasted fifteen to twenty seconds “inside one of two cars which had arrived separately ... with no apparent purpose that evening other than facilitating the brief exchange before the parties, who appeared to the officer to have no other connection to each other, went their separate ways.” Id. The defendant stated that he met the other person in order to receive payment on a debt. Fearheiley, 08-0307, p. 2, 979 So.2d at 489. The Court held that the officer had reasonable suspicion for an investigatory stop, noting that the defendant’s “other possible innocent explanations ... did not require the officer to turn a blind eye” to the encounter and ignore his “experience in narcotics investigations.” Id.
In the case sub judice, the NOPD officers utilized a Cl that was reliable in the past. The Cl reported that Mr. Howard was storing drugs at his South Salcedo Street residence, used a white Cadillac truck to deliver the drugs, and provided the 112license plate of the truck. Although the Cl did not provide predicative information such as time frame Mr. Howard would engage in the alleged illegal activity, the NOPD officers were able to corroborate certain details provided by the Cl, such as the description of the vehicle Mr. Howard was driving, the license plate of vehicle, and location of Mr. Howard’s residence. Additionally, Detective Roceaforte observed Mr. Howard make two stops wherein two unknown men entered the passenger side of Mr. Howard’s truck for a short period of time. While the NOPD officers did not actually observe a hand-to-hand transaction, Detective Roceaforte stated that the location that Mr. Howard made the second stop was known for illegal drug activity. Further, the second suspected purchaser fled from the NOPD officers and dropped a bag of marijuana when the NOPD officers attempted to conduct an investigatory stop. Based upon the past reliability of the Cl, Detective Roccaforte’s years of narcotics experience, and the NOPD officers’ observations of Mr. Howard engaging in behavior consistent with selling drugs, like in Fearheiley, the NOPD officers had reason to believe Mr. Howard was engaging in criminal activity. Thus, the NOPD officers were justified in the initial stop and detention of Mr. Howard.
Mr. Howard also contends that the trial court judge erred in denying his Motion to Suppress because no exigent circumstances existed that justified the NOPD officers’ warrantless entry into his residence.
It is a well-established exception that police officers may enter a house without a warrant if they have probable cause to believe there is contraband inside and exigent circumstances that require immediate entry. State v. Jones, 02-1931, pp. 5-6 (La.App. 4 Cir. 11/6/02), 832 So.2d 382. This Court, in State v. Fournette, 08-0254, p. 19 (La.App. 4 Cir. 7/2/08), 989 *840 So.2d 199, 211, described |13the exigent circumstances exception to the warrant requirement, as follows:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La.1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a “protected” area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
Fournette, quoting State v. Page, 95-2401, p. 10 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709.
In State v. Wright, 02-2354, p. 5 (La.App. 4 Cir. 6/18/03), 850 So.2d 778, 781, this Court discussed factors that might lead officers to conclude a warrantless entry is necessary to prevent the destruction of evidence. These factors include:
(1) The degree of urgency involved and the amount of time necessary to obtain a warrant;
(2) A reasonable belief that the contraband is about to be removed;
(3) The possibility of danger to police officers guarding the site of the contraband while a search warrant is sought;
(4) Information indicating the possessors of the contraband were aware that the police were on their trail; and
(5) The ready destruction of the contraband and the knowledge and efforts to dispose of narcotics and escape are characteristic behavior of persons engaged in narcotics traffic.

Id.

The State asserts that the NOPD officers were entitled to enter Mr. Howard’s residence because they were concerned that the second purchaser, who previously evaded the NOPD officers at the playground, or Mr. Howard’s neighbors, who | Hcould have observed Mr. Howard cuffed outside the house, would notify any occupants of Mr. Howard’s home who would then destroy any evidence while a search warrant was being obtained.
In State v. Williams, 619 So.2d 650, 654 (La.App. 4th Cir.1993), this Court found that the officers’ warrantless entry into a residence was justified to prevent the possibility of other occupants of the residence from destroying evidence. The officers were informed by a confidential informant that two brothers were dealing narcotics from their home. Id., 619 So.2d at 652. As a result of the tip, the officers conducted surveillance of the brothers’ home for a couple of days with the assistance of the informant. Id. During the surveillance, the officers observed several individuals, including the informant, one of the brothers, and two other subjects come in and out of the residence. Id. On the second day of the surveillance, the informant exited the brothers’ residence and signaled to the officers that a drug deal was about to occur. Id. A few minutes later one brother and an accomplice left the residence in separate cars. Id. When the officers observed the brother and the accomplice engage in a hand-to-hand transaction, the officers apprehended both men. Id. The officers then entered and “secured” the brothers’ residence. Id. The Williams Court found the officers’ entry was warranted because the informant “had provided information that additional quantities of cocaine were located in the house, and two *841 days earlier had witnessed [the arrested brother] walk upstairs stating that he was making a deal and would return shortly” and because the officers’ surveillance revealed activity consistent with drug trafficking. Id., 619 So.2d at 654.
However, Williams is distinguishable because the NOPD officers did not observe anyone come in and out of the South Salcedo Street residence other than | iSMr. Howard. Further, the Cl did not report to Detective Roccaforte that Mr. Howard was working in conjunction with anyone else or that Mr. Howard was residing with someone at the South Salcedo Street property. Thus, there was no reason for the NOPD officers to believe that another individual would be at the residence to destroy evidence. Moreover, there is no testimony indicating that either Mr. Howard or the other alleged occupant was aware of the narcotics investigation prior to Mr. Howard’s detention.
The record indicates that when the NOPD officers attempted to conduct an investigatory stop of the second purchaser, Mr. Howard had already left the area. Detective Roccaforte testified that Mr. Howard was getting gas at the Shell station on Tulane and Jefferson Davis when the second purchaser fled the NOPD officers. The NOPD officers did not observe the second purchaser or Mr. Howard use a cell phone to potentially warn the alleged occupant of the investigation. Any alleged exigent circumstances were created by the NOPD officers when they relocated Mr. Howard to the South Salcedo Street residence.
Recently, this Court, in Fournette, found that the entry into a car wash building was illegal where the police officers’ action caused the alleged exigency. 08-0254, p. 8, 989 So.2d at 211. The officers received information from a confidential informant that several subjects were bagging cocaine and marijuana at the car wash and decided to investigate. Id., 08-0254, p. 7, 989 So.2d at 203, quoting State v. James, 07-1103, pp. 2-3 (La.App. 4 Cir. 3/12/08), 980 So.2d 769, 771. After observing two men and a large bag of marijuana through a crack in the garage doors, the officer notified dispatch, and another officer knocked on the front door of the business and announced his presence. Fournette, 08-0254, p. 3, 989 So.2d at 201. When the officers saw several individuals panic and disperse, they | ^entered the building to secure the premises while a search warrant was obtained. Id., 08-0254, p. 8, 989 So.2d at 204, quoting State v. James, 07-1103, p. 4 (La.App. 4 Cir. 3/12/08), 980 So.2d 769, 771-72. This Court found:
[ I]t appears that any exigency that the officers had was caused by Det. Keaton’s decision to pound on the door and try to go inside. Indeed, Det. Keaton testified that the suspects would not have been able to escape the car wash undetected while they obtained a warrant, and there was no indication that the men inside the car wash knew that the officers were outside or had discovered that drugs were inside until Det. Keaton pounded on the door, announced the officers’ presence, and demanded that they open the door. Without exigent circumstances, the officers could not lawfully enter without a warrant. Thus, the officers’ entry was not lawful.
Id. at p. 22, 989 So.2d at 213.
This Court also found in State v. Jones, 02-1931 (La.App. 4 Cir. 11/6/02), 832 So.2d 382, that there were no exigent circumstances to justify the officers’ warrantless entry into a defendant’s residence even though the individual who had just purchased drugs was arrested near the defendant’s home. In Jones, the officers conducted surveillance of a targeted residence for three days over a period of one and a *842 half months. On each occasion they observed suspected drug transactions, and after the first two days, they obtained an arrest warrant for one of the participants. In addition, they began preparing a search warrant application for the residence, but they were waiting for additional information from the third day of surveillance. After watching more suspected drug sales on the third day of the surveillance, the officers stopped one of the participants “near” the residence. After finding contraband and arresting the participant, they then entered the residence to “secure” it while they sought the search warrant and in fact began searching the residence prior to the issuance of the warrant. The trial court judge | ^suppressed the evidence, finding the fact that the participant was arrested “near” the defendant’s residence did not give the officers exigent circumstances to enter the residence prior to the issuance, of the warrant. This Court agreed and upheld the suppression of the evidence. The Jones Court stated, in part:
[ Tjhere is merit to defense counsel’s argument that any “exigent circumstances” in this case were created by the officers’ decisions to wait to get the search warrant and to arrest Raiford [the participant] “near” the residence. Thus, the trial court did not abuse its discretion by finding there were no exigent circumstances which would have allowed the officers to enter the residence prior to obtaining the warrant.
Id. at pp. 6-7, 832 So.2d at 387.
Here, assuming Mr. Howard had an accomplice or someone residing within his South Salcedo Street home, Mr. Howard was blocks away when he was stopped and detained by the NOPD officers. The park where the NOPD officers attempted to stop the second purchaser was also several blocks from Mr. Howard’s residence. Under Jones, mere proximity to the residence where contraband is allegedly stored is insufficient to create exigency for the warrantless entry absent reasonable belief that evidence is being destroyed.[10] Moreover, it was only after the NOPD officers relocated Mr. Howard to the South Salcedo Street residence that any alleged occupant or neighbor would have been made aware of their narcotics investigation. Thus, similar to Fournette, the NOPD officers’ action created the alleged exigent circumstances. Accordingly, the NOPD officers’ subsequent entry into Mr. Howard’s home without a warrant was not justified.
Alternatively, the State asserts that the evidence should not be suppressed because Detective Roccaforte did not base his application for a search warrant on | ^anything found while securing the residence. The State relies State v. Flores, 10-0960 (La.6/18/10), 37 So.3d 997 (per cu-riam ). In Flores, the Louisiana Supreme Court reversed the trial court judge’s grant of a motion to suppress under the inevitable discovery doctrine. Id. at p. 3, 37 So.3d at 998. The Flores Court found that even assuming police entry into the residence occurred without exigent circumstances or consent, suppression of the evidence was not required because the police would have obtained a valid search warrant “[b]ecause nothing the officers observed on the premises after their initial entry affected the decision to obtain a warrant, and because the probable cause basis for the warrant application derived not from their observations on the scene but from wholly independent sources, i.e., *843 from a confidential informant and defendant.” Id. at pp. 1-2, 37 So.3d at 998.
Similarly, in Fournette, 08-254, p. 24, 989 So.2d at 214, this Court held that the police officers’ warrantless entry into the car wash did not taint a subsequently-obtained search warrant. Fournette noted that the only reference contained in the search warrant affidavit to the officers’ entry was the statement that the “officers entered the car wash to secure it while [another officer] obtained the search warrant.” Id. This Court thus held “because the warrant was not based upon any information gleaned from the illegal entry, it was not tainted by that entry, and the inevitable discovery doctrine would apply in this case if the search warrant was lawfully issued.” Id.
In the instant case, however, contrary to the State’s assertion, the information discovered from the NOPD officers’ initial warrantless entry was included in the application for a search warrant. Although the record does not contain a copy of the application for search warrant or the subsequently issued [ ^search warrant, Detective Roccaforte testified at the hearing on the motion to suppress that the items the NOPD officers observed in Mr. Howard’s home were included in the application.[11] The transcript provides:
[ Defense Counsel]: When you apply, for the search warrant, do you indicate that ... when you were securing the residence ... that you observed marijuana in the bedroom? Is that indicated on your application for search?
[Det. Roccaforte]: To make sure I’d look at the search warrant, but I’m pretty certain that, yes, I indicated that in the search warrant.
* * *
[Det. Roccaforte]: Yes. The second paragraph from the bottom of the second page, upon securing [the residence I] observed approximately — I said one pound of vegetable matter, sandwich bangs, and a digital scale lying on the bedroom dresser in plain view.
[Defense Counsel]: So you would agree that that’s in the application that you gave to Judge Blanchard?
[Det. Roccaforte]: Yes.
Thus, because the application was based in part on the evidence discovered from the NOPD officers’ unjustified entry, the subsequently issued warrant to search Mr. Howard’s residence does not cure the illegal entry.
Although the NOPD officers had reason to suspect Mr. Howard’s involvement in illegal narcotics transactions, the NOPD officers’ forced entry into Mr. Howard’s home without a warrant was unjustified. No exigent circumstances existed that would permit the intrusion because the NOPD officers had no reason to believe that anyone other than Mr. Howard lived at the residence and had no information indicating that any alleged occupant of the residence was aware of the narcotics investigation, such that evidence would be destroyed. Moreover, the NOPD officers created any exigency by returning Mr. Howard to his residence. ^Further, because the search warrant was based in part on the items discovered from the NOPD officers’ unjustified entry, the subsequently issued warrant to search Mr. Howard’s residence does not cure the ille *844 gal entry. Accordingly, we find that the trial court judge should have suppressed the evidence found at Mr. Howard’s home. We reverse the trial court judge’s ruling on the Motion to Suppress the evidence, vacate Mr. Howard’s guilty pleas and sentences, and remand for further proceedings.

DECREE

For the above-mentioned reasons, we reverse the trial court judge’s ruling on Mr. Howard’s Motion to Suppress because the NOPD officers did not have cause to enter Mr. Howard’s residence without a warrant. Therefore, we vacate Mr. Howard’s guilty pleas and sentences, and remand for further proceedings.
REVERSED; VACATED AND REMANDED.
BONIN, J., dissents with reasons.

. The bill of information alleges that Mr. Howard was previously convicted of attempted armed robbery in Case No. 407-853.

. This will be addressed in this Court's review for errors patent.

. The State amended the bill of information to reflect the agreement the same date.

. There is a discrepancy in the record with regard to the fees imposed by the trial court judge for the firearms charge. The sentencing transcript provides that the trial court judge ordered Mr. Howard to pay $149.00 in connection with the firearms charge, but the minute entry contains the fees assessed for the drug charge. Additionally, both Mr. Howard and the State omit the $149.00 fine from their briefs.

. In his motion for appeal, Mr. Howard requested that the application for search warrant and the warrant for search, among other things, be made part of the record for appeal. However, when the record was lodged with this Court, the application and search warrant were not included in the record. As a result, on September 25, 2012, this Court issued an order to the Criminal District Court Clerk of Court to forward the missing documents (introduced at the April 1, 2011 hearing as S-l en globo) or advise the Court in writing that the documents cannot be located. Pursuant to this Court's order, the Clerk of the Criminal District Court advised this Court in writing that the referenced documents were not contained in the case file.

. When the NOPD officers were unsuccessful in detaining the individual in the park, Detective Roccaforte instructed Detective Czapla to go back to South Salcedo Street to keep an eye on the residence.

. Prior to forcing entry into the residence, the NOPD officers unsuccessfully attempted to open the door with each key on the key ring. The NOPD officers later found the front door key in the white truck Mr. Howard was driving.

. As noted above, neither the application nor the warrant is contained in the appellate record.

. Initially the NOPD officers were not aware that Mr. Howard was convicted of a felony and arrested him for possession of a firearm while in possession of illegal narcotics and possession with the intent to distribute marijuana. The NOPD officers subsequently learned that Mr. Howard was previously convicted of armed robbery and added the charge of possession of a firearm by a convicted felon. The State apparently did not prosecute the charge of possession of firearm while in possession of illegal narcotics.

. But see, State v. Pounds, 00-2118, pp. 6-7, 789 So.2d 721, 724-725, and fn. 11 (La.App. 4 Cir.2001).

. As previously noted, at the hearing on the motion to suppress the evidence, the State introduced the application and search warrant as State’s Exhibit S-l. These documents, however, are not contained in the record on appeal. The Clerk of the Criminal District Court advised this Court that the referenced exhibit was not contained in the case file.