DANIEL L. DYSART, Judge.
I,Defendant, Clinton D. Rapp, appeals his conviction by a Plaquemines Parish jury of possession with intent to distribute cocaine and possession with intent to distribute clonazepam. For the reasons that follow, we affirm.
PROCEDURAL BACKGROUND
By bill of information dated May 26, 2011, Clinton Rapp was charged with one count of possession with intent to distribute a Schedule II controlled dangerous substance (cocaine), a violation of La. R.S. 40:967 A(l), and with possession with intent to distribute a Schedule IV controlled dangerous substance (clonazepam), a violation of La. R.S. 40:969 A(l). Rapp pleaded not guilty to both charges. He then filed various motions, including several motions to suppress, one of which was based on his contention that the search and seizure of the evidence was unconstitutional. A hearing was held on March 13, 2012, at which time the trial court found probable cause and denied the motions to suppress.
The State then filed a notice of intent to introduce evidence of other crimes pursuant to La. C.E. art. 404 B(l), in accordance *106 with State, v. Prieur, 277 So.2d 126 (La.1973). The basis of the motion was Rapp’s alleged prior sale of cocaine to an informant on February 9, 2011, in addition to evidence of alleged hand to 12hand transactions on February 16, 2011 which led to Rapp’s arrest. A hearing was held on January 15 and 18, 2013; the trial court ruled in favor of the State, allowing it to introduce the evidence.
After several continuances, Rapp proceeded to trial before a Plaquemines Parish jury on February 5-6, 2013. The jury found Rapp guilty as to both counts. Rapp’s pro se motion for new trial was denied, and the court held a sentencing hearing on February 18, 2014. The court sentenced Rapp to serve eight years at hard labor on each count, the first two of which were to be served without the benefit of probation, parole or suspension of sentence, both of which were to be served concurrently, and with credit given for time served. Rapp then filed a motion to reconsider the sentence, which was denied. This appeal followed.
FACTUAL BACKGROUND
Plaquemines Parish Sheriffs Office (“PPSO”) Deputy Adam Barrois, who in February, 2011, was assigned to the Narcotics Division, testified that a complaint was made to the PPSO about Rapp, prompting the PPSO to conduct surveillance on him. According to Deputy Bar-rois, on the night of February 16, 2011, he observed Rapp leave his mother’s house (where Rapp resided) and drive to several different residences where he would remain in the driveway for between 25-30 seconds and during which time someone would come out of the residence, engage in a hand to hand transaction with Rapp and return to the residence. Rapp would thereafter leave and return to his mother’s house. Deputy Barrois observed Rapp go in and out of his mother’s house several times that evening. Deputy Barrois testified that “[e]ach time ... Rapp left Taylor Lane {his mother’s house],” he observed “approximately three” “actions like this” on that evening.
|¡According to Deputy Barrois, a trained narcotics officer, in his experience, Rapp’s activities on February 16, 2011 were indicative of narcotics transactions. While he did not see what was exchanged, he “saw something go into the window and something come out of the window.” Again, he testified “that’s common practice between ... transactions of narcotics.”
Similarly, Deputy Barrois testified that, while he was conducting the surveillance, he observed Rapp make several u-turns before pulling into the various driveways. These maneuvers, according to Deputy Barrios, are also indicative of narcotics transactions. He testified that “[a] lot of narcotics dealers ... make u-turns to try and see if people are tailing them.”
Based on what he observed, Deputy Barrois communicated information on Rapp to Corporal Chris Johnson. Deputy Barrois did not make any arrests of the individuals with whom Rapp made the transactions because the PPSO is “not looking for street level buyers. [They are] looking for a dealer.”
Corporal Johnson, who was employed by PPSO as a narcotics agent in February, 2011, confirmed that a complaint was made to the PPSO that Rapp was selling drugs in the Boothville and Venice areas. On the evening of February 16, 2011, he received information from Deputy Barrois that Rapp was driving to various residences, meeting with people from the residences for 10 to 15 seconds, and making hand to hand transactions with them. According to Corporal Johnson, “a transaction that occurs within five to ten seconds in an exchange ... is usually consistent with a drug transaction.” This is particu *107 larly true when there are “multiple events ... in an evening;” one event “wouldn’t be enough.”
On the night prior to February 16, 2011, Corporal Johnson assisted in a routine traffic stop of Rapp, and it was discovered that Rapp had a suspended |4driver’s license. When he located Rapp’s vehicle on February 16th, he noted that it had a temporary license plate in the rear window which was not legible and had no expiration date. On these bases, he initiated a traffic stop and activated the lights and sirens on his unmarked vehicle.
Rather than pulling over immediately, Rapp drove approximately a quarter of a mile and then stopped his vehicle. While Corporal Johnson was following him, he saw Rapp being “fidgety in the car,” with his “right arm moving around a lot.” In Corporal Johnson’s experience, this “indicates somebody’s usually trying to hide something in the vehicle or they’re possibly reaching for a weapon or something of that nature.” When Rapp finally stopped his vehicle, he “exited the vehicle very quickly,” which to Corporal Johnson indicated someone “trying to create separation from the vehicle to prevent the officer from approaching the vehicle and possibly seizing anything that’s inside of it.”
Corporal Johnson walked up to the vehicle and observed a clear plastic bag partially tucked into “the slit where the emergency brake is” and found that it contained 11 white rock-like substances, later confirmed to be cocaine. According to Corporal Johnson, this number of rocks is indica-five of distribution, rather than personal use. In addition, sixteen white pills were found in the area of the emergency brake. These were determined to be clonazepam. Corporal Johnson found no paraphernalia suggestive of crack cocaine use in Rapp’s vehicle when it was searched.
| ¡¡After Rapp was stopped, information was relayed by radio to PPSO Agent Michael Olivier, who prepared a search warrant for Rapp’s mother’s address. The residence was searched but no evidence of cocaine use was found.[1]
According to Corporal Johnson, Rapp also had $1,392.00 in cash in his possession. He indicated that he advised Rapp of the procedure with respect to the money; “it would be placed into evidence ... and he would have to basically rectify that at a later date through a civil process.” He confirmed that “if [Rapp came] in with proof, he [could] get the money back. Rapp did not do so, and accordingly, a Judgment of Forfeiture was signed on June 22, 2011. Rapp maintained that this money was earned while working for BP after the recent oil spill.
DISCUSSION[2]
A. Insufficiency of the evidence
In his second assignment of error, Rapp maintains that the evidence adduced at trial was insufficient to prove that he possessed the narcotics with the intent to distribute. We address this issue first; “[w]hen issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, [the reviewing court is to] first determine the sufficiency *108 of the evidence.” State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55, citing State v. Hearold, 603 So.2d 731, 734 (La.1992). As the Marcantel Court further indicated,
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that |fithe State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Hampton, 98-0331, p. 13 (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999). Pursuant to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. Louisiana Revised Statute 15:438 provides that the fact finder, when analyzing circumstantial evidence, must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83.
Id., 00-1629, p. 8, 815 So.2d at 55-56. See also, State v. Armstead, 11-1344, p. 4 (La.App. 4 Cir. 7/25/12), 98 So.3d 891, 894, writ denied, 12-1881 (La.3/8/13), 109 So.3d 355. “Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury.” Id., quoting State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18.
This Court recently reiterated the well-settled rule that “[i]t is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.” State v. Webb, 13-0146, p. 15 (La.App. 4 Cir. 1/30/14), 133 So.3d 258, 269, writ denied, 14-0436 (La.10/3/14), 149 So.3d 793. Indeed, credibility determinations are questions of fact “within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence.” Id., 13-0146, pp. 15-16, 133 So.3d at 269. Accordingly, “[e]ven where the record contains evidence conflicting with the testimony accepted by the trier of fact, the evidence accepted by the trier of fact is not rendered insufficient.” State v. Jones, 537 So.2d 1244, 1249 (La.App. 4th Cir.1989). Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’ testimony, if |7believed by the fact finder, is sufficient to support a factual conclusion. State v. Marshall, 04-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369.
In the instant matter, we have reviewed the evidence presented at trial under the Jackson standard, and find it sufficient to support all of the elements of the crimes for which Rapp was convicted.
Under La. R.S. 40:967 A(l), “it shall be unlawful for any person knowingly or intentionally ... [t]o ... possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II.” Similarly, under of La. R.S. 40:969 A(l), “it shall be unlawful for any person knowingly or intentionally ... [t]o possess with intent to produce, manufacture, distribute, or dispfense, a controlled dangerous substance classified in Schedule IV.” Common elements of both crimes include (1) possession and (2) an intent to distribute; in order for Rapp to have been convicted, the State was required to prove that he “knowingly” and “intentionally” possessed the drug with the “intent to distribute.” State v. Frith, 11-0187, p. 6 (La.App. 4 Cir. 8/10/11), 102 So.3d 65, 69, writ denied, 11-1942 (La.4/13/12), 85 So.3d *109 1244, citing State v. Williams, 594 So.2d 476, 478 (La.App. 4th Cir.1992).
As the Frith Court indicated, “[t]he elements of knowledge and intent are states of mind which need not be proved as facts, but which may be inferred from the circumstances.” Id., 11-0187, p. 7, 102 So.3d at 69. As such “[t]he factfinder may draw reasonable inferences to support these contentions based on the evidence presented.” Id., 11-0187, p. 7, 102 So.3d at 70. In the instant matter, there can be no doubt that Rapp knowingly and intentionally possessed the narcotics at issue. During Rapp’s booking interview, and after he signed a waiver of rights form, Rapp advised that the drugs found in his vehicle were for his personal use. He | ^likewise claimed the clonazepam as his own, advising that he had no prescription for it, but, rather, obtained them from someone else.
As pertains to the “intent to distribute” element, the Frith Court reiterated our well-settled jurisprudence that “specific intent to distribute ... may be established by proving circumstances surrounding the defendant’s possession which give rise to a reasonable inference of intent to distribute.” Id. Some of those circumstances include the “previous distribution by the defendant; the presence of paraphernalia for distribution; the possession of an amount sufficient to create a presumption of intent to distribute; and, packaging in a form usually associated with distribution rather than personal use.” Id. See also, Hearold, 603 So.2d at 735.[3] These factors are not exclusive and the evidence supporting the presumption of intent to distribute need not “fall squarely within the [.Hearold ] factors ... to be sufficient for the jury to find that requisite intent to distribute.” State v. Cushenberry, 94-1206, p. 6 (La.App. 4 Cir. 1/31/95), 650 So.2d 783, 786.
In this matter, Deputy Barrois, a trained narcotics officer, testified to two crucial points: (1) the hand to hand transactions he observed, coupled with Rapp’s actions — leaving his mother’s house, driving to several residences after making several u-turns, engaging in the transactions, returning to his mother’s house, and|9then repeating the same activities — are indicative of distribution; (2) the amount of narcotics found with Rapp was likewise indicative of distribution.[4]
Corporal Johnson, a seasoned narcotics agent with six years of service in the Narcotics Division (and 11 years with the PPSO), testified that Rapp’s actions were indicative of narcotics transactions. He also confirmed that the amount of narcotics found with Rapp was consistent with distribution. Moreover, according to Corporal Johnson and Agent Olivier, nothing *110 evidencing drag use was located with Rapp or at his mother’s house.
Based on these factors, a rational trier of fact could conclude that the State proved the essential elements of the crimes beyond a reasonable doubt; the jury’s finding that Rapp possessed the narcotics with the intent to distribute was warranted. That the officers did not actually see what was handed between Rapp and the various people with whom he met is of no consequence. The facts of this case are analogous to those of the Louisiana Supreme Court decision in State v. Fearheiley. Although the issue in that case was whether a warrantless seizure of a bag of drugs plainly visible in the defendant’s vehicle was lawful, the Court noted:
In the present case, the police officer observed the “independent, yet complementary and simultaneous actions by two parties,” conducting an apparent hand-to-hand transaction ... although the officer could not see what either person had in his or her hand. The apparent exchange lasted no more than 15 to 20 seconds inside one of two cars which had arrived separately in the parking lot of a Circle K store with no apparent purpose that evening other than facilitating the brief exchange before the parties, who appeared to the officer to have no other connection to each other, went their separate ways. That the encounter had other possible innocent |inexplanations, including the one offered by defendant after the stop that the unidentified female involved in the transaction had paid off a debt she owed him, did not require the police officer to turn a blind eye to the circumstances and ignore what two years of experience in narcotics investigations, encompassing 15 to 20 arrests, had taught him, that in the narcotics trade, “when it’s done outside, it’s done very fast from one hand to the next.”
State v. Fearheiley, 08-0307, pp. 1-2 (La.4/18/08), 979 So.2d 487, 488-89 (per curiam). See also, State v. Howard, 12-1117, p. 12 (La.App. 4 Cir. 7/3/13), 120 So.3d 831, 839, writ denied, 13-1662 (La.2/7/14), 131 So.3d 856 (“Based upon the past reliability of the Cl, Detective Roccaforte’s years of narcotics experience, and the NOPD officers’ observations of Mr. Howard engaging in behavior consistent with selling drugs, like in Fearheiley, the NOPD officers had reason to believe Mr. Howard was engaging in criminal activity.”); State v. Smith, 06-557 (La.App. 5 Cir. 11/28/06), 947 So.2d 95.
B. Admission of hand to hand transactions
In Rapp’s first assignment of error, he contends that the trial court erred in allowing Prieur evidence to be admitted at trial in the form of the hand to hand transactions observed on February 16, 2011.[5] He maintains that these transactions are “other crimes” evidence under La. C.E. art. 404 B(l) for which insufficient information was adduced at trial. He contends that, because Deputy Barrios and Corporal Johnson did not testify as to the location of the transactions, their precise number, or the identity of the persons with whom the transactions were conducted, their testimony was too vague to support “that the activity observed actually is |n evidence of another crime.” He argues that the State did not “show by a preponderance of the evidence that [the hand to hand transactions] occurred.” That is, he *111 maintains that “evidence of the hand to hand transactions was not adequately proven.” He likewise contends that the introduction of these “other crimes” was “more prejudicial than probative.”
In accordance with Pyieur, the State bears the burden of proving that a defendant committed other crimes, wrongs or acts. See State v. Rose, 06-0402, p. 12 (La.2/22/07), 949 So.2d 1236, 1243. “The burden of proof in a pretrial hearing held in accordance with ... Prieur ... shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404.” La. C.E. art. 1104. This Court has held the burden is on the state to show facts which would support a jury finding that the defendant committed the prior act by a preponderance of the evidence. State v. Mark, 13-1110, p. 20 (La.App. 4 Cir. 7/30/14), 146 So.3d 886, 901.
Here, Officer Barrios was the only officer to testify with regard to the observance of prior transactions by the defendant. He testified that he could not see what was being exchanged and did not know what it was. We find this testimony deficient to prove that the prior hand to hand transactions were crimes that would be admissible under the authority of Pri-eur.
Although we find that evidence of the hand to hand transactions is not admissible under Prieur, we do find that the transactions are part of the res gestae of the crimes for which Rapp was charged. Such evidence is admissible “when [it] relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.’ ” State v. Norah, 12-1194, p. 27 (La.App. 4 Cir. 12/11/13), 131 So.3d 172, 190, writ denied, 14-0084 (La.6/13/14), 140 So.3d 1188, writ denied, 14-0082 (La.6/20/14), 141 So.3d 287, citing La. C.E. art. 404 B(1). This exception “is commonly referred to as res gestae.” Id., 12-1194, p. 27, 131 So.3d at 190. As this Court noted, the Supreme Court:
... has interpreted the res gestae exception broadly, concluding that the exception includes ‘not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances.’ ”
State v. Falkins, 12-1654, p. 20 (La.App. 4 Cir. 7/23/14), 146 So.3d 838, 851, quoting State v. Colomb, 98-2813, pp. 3-4 (La.10/1/99), 747 So.2d 1074, 1075-76 (emphasis added.).
While the prosecution must “provide the defendant with notice and a hearing before trial if it intends to offer such evidence” of other crimes,[6] no such notice is required when the “other crimes” evidence is part of the res gestae. See Falkins, 12-1654, p. 20, 146 So.3d at 851 (“Evidence admissible under the res gestae exception is not subject to any advance notice requirements by the State.”).
The Louisiana Supreme Court, in State v. Taylor, 01-1638, p. 10 (La.1/14/03), 838 So.2d 729, 741, quoting Colomb, 98-2813, p. 3, 747 So.2d at 1076, explained res gestae:
Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not *112 accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence “to insure that the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by |, (¡proving its immediate context of happenings near in time and place.”
(Internal quotations omitted). This evidence can consist of “testimony of ... police officers pertaining to what they ... observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances.” Id., 01-1638, pp. 10-11, 838 So.2d at 741.
In State v. Scott, 09-1658 (La.10/22/10), 48 So.3d 1080 (per curiam), for example, the Louisiana - Supreme Court considered whether evidence of three controlled drug purchases which took place over the course of month were admissible in the trial of a defendant charged with possession with intent to distribute. The court, finding the evidence to be admissible, stated:
Even assuming, arguendo, that the three prior sales at the Hailey street address did not form part of the res gestae, they were plainly relevant to the question of whether defendant, assuming further that he had actual or constructive possession of the contraband in the residence, intended to distribute the cocaine, an essential element of the offense charged ... The prior sales at the Hailey Street address provided jurors with an evidentiary basis for assessing Sergeant Ohler’s opinion that even the single rock of cocaine found wrapped in jplastic on the headboard of the bed in the master bedroom where the police arrested defendant was intended for sale, as was the cocaine found in the spare room closet, as evidenced also by the box of plastic baggies and razor blades observed on the fold-out table next to the bed, and by the absence of any paraphernalia associated with the smoking of crack cocaine in the home.
Id., 09-1658, pp. 8-9, 48 So.3d at 1085.
Similarly, in State v. Garner, 97-0467 (La.App. 4 Cir. 5/7/97), 694 So.2d 535, a police officer testified to observing the defendant engage in several hand to hand transactions over the period of about one hour prior to the defendant’s arrest. This Court found that the evidence was part of the res gestae and admissible to l^show intent, noting that the observed transactions were close in time and had the same distribution center. The Court stated that “[bjecause of the close connection in time and location, the possession with the intent to distribute the cocaine will have the requisite connexity only when all relevant and admissible evidence about the prior actions of the defendants are admitted.” Id., 97-0467, p. 4, 694 So.2d at 536. See also, State v. Jackson, 05-923, pp. 11-12 (La. App. 5 Cir. 3/28/06), 926 So.2d 72, 79 (“evidence of defendant’s involvement in prior drug deliveries is clearly an exception to the general prohibition against evidence of other crimes.”).
In the instant matter, Deputy Barrois witnessed Rapp’s activities. He saw Rapp leave his mother’s house several times, drive to various residences, engage in hand to hand transactions and leave those residences when each person returned to his or her residence. Each stop lasted between twenty-five to thirty seconds, which, according to Deputy Barrois and Corporal Johnson, is indicative of narcotics transactions. These hand to hand transactions are clearly evidence of the crime with which Rapp was charged — possession with intent to distribute — and are admissible as part of the res gestae. Even if these transactions were not considered res gestae, as *113 the Scott case indicated, they “were plainly relevant to the question of whether defendant, assuming further that he had actual or constructive possession of the contraband in the residence, intended to distribute the cocaine [and clonazepam], an essential element of the offense charged.” Scott, 09-1658, p. 8, 48 So.3d at 1085.
Likewise, the “close proximity in time” element is met. Deputy Barrois testified that he observed Rapp exiting his mother’s house around 8:00 p.m., and he followed Rapp as he went to the various residences where the hand to hand transactions occurred. Corporal Johnson, who arrested Rapp, testified that the 11sarrest took place around 9:30. Accordingly, the hand to hand transactions all took place in a short period of time.
Rapp contends that the trial court should not have admitted these transactions into evidence because their admission was more prejudicial than probative.[7] Rapp’s contention is without merit.
The Louisiana Supreme Court, in Taylor, 01-1638, p. 16, 838 So.2d at 745 indicated:
Previous jurisprudence held that when evidence of other bad acts is admissible as res gestae, the probative value of the evidence need not be balanced against its prejudicial effect. State v. Brown, 428 So.2d 438, 442 (La.1983). However, current cases question whether the integral-act evidence under La. C.E. art. 404(B) remains subject to the balancing test of La. C.E. art. 403. See Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074.
Neither Taylor nor Colomb case definitively answered the question of whether a balancing test must be applied to res ges-tae evidence. However, in each case, the Supreme Court found it unnecessary. In Taylor, for example, the Court found that “the prejudicial effect of the evidence ... does not substantially outweigh its probative value.” Id., 01-1638, pp. 16-17, 838 So.2d at 745. It noted that, “[although all evidence of other crimes is prejudicial to defendant, the other crimes evidence was necessary to give the jury a complete picture of the events which gave rise to the instant offense and led to the defendant’s ultimate arrest_” Id., 01-1638, p. 17, 838 So.2d at 745.
hJn the instant matter, we find that the hand to hand transactions were elements of the crime of possession with intent to distribute, and as the Taylor Court found, was necessary to apprise the jury of the facts leading up to Rapp’s arrest. This evidence, accordingly, fell within the res gestae doctrine and was admissible at Rapp’s trial. See, e.g., State v. Granier, 592 So.2d 883, 888 (La.App. 4th Cir.1991)(“testimony of the sequence of events leading directly to the arrest of Granier [was admissible] because it constituted part of the res gestae.”).
C. Admissibility of defense exhibits
Rapp next contends that the trial court erred in refusing to allow documentary evidence at trial, which his counsel proffered. He sought to introduce copies of a check, dated October 8, 2010, written to him from Gulf Coast Claims Facility in the amount of $15,000, an October 18, 2010 deposit slip in his mother’s name for the same amount, and a February 1, 2011 check written by Rapp’s mother and from her account to “Cash” in the amount of $2,800. When Rapp attempted to introduce this evidence into trial, in an effort to *114 explain the amount of cash found with Rapp at the time of his arrest, the trial court refused its admission on the basis that the documents were not properly authenticated. As noted previously, appellate courts will not overturn trial court rulings on the admissibility of evidence absent a clear abuse of discretion. See Williams, 12-0252, p. 20, 115 So.3d at 611.
The State argues that, under La. C.E. art. 1004, Rapp was required to offer either the original documents or certified copies of the documents from the bank.[8] |17Rapp counters by arguing that, pursuant to La. C.E. art. 901, Sedonia Rapp “was a valid person to authenticate the documents presented.”[9]
We need not reach the issue of whether the trial court committed reversible error in disallowing the documents into evidence at trial. The trial court allowed Rapp’s mother, Sedonia Rapp to testify as to all of the information contained in the documents. Ms. Rapp testified that her son worked on the BP oil spill until his arrest and that she deposited his paychecks into her own account because Rapp does not have a checking account. When Rapp received a $15,000 check in “October or November” for the BP oil spill, he endorsed it, and Ms. Rapp then deposited it into her account. In February, 2011, she wrote out a check in the amount of $2,800 to “Cash.” When questioned as to whether Rapp “would then go cash the check and ... hold on to the cash,” Ms. Rapp stated that “[Rapp] was supposed to be going to buy him some clothes.” She indicated that it was not unusual for Rapp to have large amounts of cash on him because he has no bank accounts.
|1sAs Rapp contends, he sought to introduce the documents to “corroborate[ ] Se-donia Rapp’s testimony that Mr. Rapp had obtained the money legally, from working for the oil company.”[10] He further contends that “[w]ith physical documentation proving that the money was obtained legally, the State would have been unsuccessful in the argument that the large sum of money was the proceeds from drug deals.”
The copy of the $2800 check proffered into evidence was written by Ms. Rapp on February 1, 2011, approximately two weeks before Rapp’s arrest. It was endorsed by Ms. Rapp. Nowhere on the prof *115 fered check is there any evidence that Rapp was in any way connected to that $2800 check; he did not endorse it under his mother’s signature.
Moreover, as the record demonstrates, the jury heard Ms. Rapp’s testimony about Rapp’s check, her putting it into her own account, her writing a check to “Cash,” and that it was not unusual for Rapp to have large amounts of cash on him. In his closing argument, counsel for Rapp also explained the cash found on Rapp by referring to his mother’s testimony. While we cannot know what emphasis the jury placed on the cash found with Rapp at the time of his arrest, it is clear that Rapp’s mother’s testimony gave the jury an alternate explanation as to why Rapp had $1392 in his possession at his arrest. We therefore find no prejudice to Rapp and no abuse of the trial court’s discretion in disallowing the documents into evidence.
1 ^CONCLUSION
For the foregoing reasons, we affirm Clinton D. Rapp’s conviction.
AFFIRMED.

. We note that there was a discrepancy in the address contained in the search warrant and that of Rapp's house, although there is no question that it was Rapp’s mother's house which was actually searched. This Court, in State v. Powell, 13-1581, p. 11 (La.App. 4 Cir. 10/15/14), 151 So.3d 890, 896, recendy addressed the issue of this discrepancy, agreeing with the trial court’s assessment that, "despite any error in the street number of the residence, the warrant affidavit provided a proper description of the location to be searched with particular and’sufficient detail.”

. As always, we have reviewed the record and found no errors patent.

. [C]ertain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance ... include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
Hearold, 603 So.2d at 735.

. We find no merit in Rapp’s contention that, because the State did not offer any expert testimony that the amount of cocaine found with Rapp was consistent with distribution rather than personal use, the State failed to prove intent to distribute. The only testimony adduced at trial indicated that this amount was, in fact, suggestive of distribution.

. The State’s Prieur notice also included evidence of a prior controlled buy of narcotics which allegedly took place on February 9, 2011. However, as Rapp concedes, no evidence of the controlled buy was introduced at trial; thus the only issue before us is the introduction of the hand-to-hand transactions.

. State v. Wilson, 12-1765, p. 14 (La.App. 4 Cir. 2/12/14), 138 So.3d 661, 672, citing Rose, 06-0402, p. 12, 949 So.2d at 1243.

. Rapp’s reasoning is that, even though a criminal defendant’s prior bad acts may be relevant and otherwise admissible under La. C.E. art. 404 B, the court must still balance the probative value of the other crimes, wrongs or acts evidence against its prejudicial effects before the evidence can be admitted. La. C.E. art. 403.

.Article 1004 states:
The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
(1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;
(2) Original not obtainable. No original can be obtained by any available judicial process or procedure;
(3) Original in possession of opponent. At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing;
(4) Collateral matters. The writing, recording, or photograph is not closely related to a controlling issue; or
(5) Impracticality of producing original. The original, because of its location, permanent fixture, or otherwise, cannot as a practical matter be produced in court; or the cost or other consideration to be incurred in securing the original is prohibitive and it appears that a copy will serve the evidentiary purpose.

. Under La. C.E. art. 901 A, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” Subpart B then lists a number of "examples of authentication,” including the "[t]estimony of [a] witness with knowledge" to testify "that a matter is what it is claimed to be.” La. C.E. art. 901 B(l).

. The check sought to be introduced was written on the account of "Gulf Coast Claims Facility.”