524 So.2d 164 (1988)
STATE of Louisiana
v.
Eftain E. DURON.
No. KA 8215.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
*165 Sherry Watters, Orleans Indigent Defender Program, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., William A. Marshall, Asst. Dist. Atty., New Orleans, for appellee.
Before BYRNES, CIACCIO and PLOTKIN, JJ.
CIACCIO, Judge.
Codefendants Eftain Duron and Leovigildo Creagh were charged with willful and unlawful possession with intent to distribute a controlled dangerous substance, cocaine. La.R.S. 40:967. Duron was found guilty of possession of cocaine after a judge trial and Creagh was acquitted. Duron was sentenced to serve five years at hard labor, with credit for time served. He appeals his conviction and sentence, relying on two assignments of error. We affirm Duron's conviction and sentence.
The record reveals these facts:
New Orleans Police Officers Pedro Marino and Lloyd Clark received word from a confidential informant ("CI") that drugs were being sold out of the Blue Lagoon Lounge located at 2112 St. Claude. The CI who the officers testified had previously assisted in about 100 drug cases informed them that some of the sales occurred at the intersection of Marigny and Royal Streets to avoid drawing attention to the bar. Inside of the bar was a locker where Eftain Duron stored the contraband, the CI said. The CI also described what Mr. Duron was wearing on January 3, 1986, and described the defendant's truck and its location at the bar.
Officers Marino and Favre went to the bar and saw the truck parked in front. The Officers then followed Mr. Duron as he went to a bar located at the intersection of Royal and Marigny Streets. At that location, a drug transaction appeared to have occurred. Duron then drove to his house where it was believed he kept a large supply of cocaine.
Some two hours, later the CI contacted Officer Marino and told him Duron had returned to the Blue Lagoon Lounge. Marino proceeded to the lounge. Upon entering, he observed the locker, which reportedly contained cocaine located near the door. Officer Marino requested permission to search the locker but he was refused permission. He thereafter spoke to suspects Duron and Creagh and advised them of their rights. They were told that the officers were investigating cocaine trafficking and were asked if they had anything to declare. Neither suspect made a declaration. When asked whether there was cocaine on the premises, Duron said he could not be sure.
A fellow police officer was instructed to prepare an application for a search warrant (A copy of the application and warrant are attached as Exhibit A).
For approximately two hours the officers conducted an investigation. They also summoned the Vice Squad officers to inspect the establishment's liquor licenses. According to Officer Marino, the question of whether the bar's co-owners could have left did not arise.
In the same evening, on January 4, 1986, at approximately 2:25 a.m., the Officers, with several other officers, executed a search warrant for the Blue Lagoon Lounge at 2112 St. Claude Avenue. Several patrons of the bar were excused. The co-owners of the bar, Mr. Duron and Mr. Creagh, together with several employees, remained. Duron and Creagh were instructed to open the locker. Duron advised the officer that his key was on a nail behind the bar. Thereafter, however, Creagh volunteered a key to the locker. The officers opened the locker and discovered $2,130 in cash, two bags of what appeared to be cocaine, certain business cards and mathematical records. During this time, Officer Wayne Favre also discovered a vial of cocaine on the floor of the office near the wall. Thereafter the two men were placed under arrest for possession of cocaine with intent to distribute.
*166 In his first assignment of error, defendant Duron argues that the trial court erred in refusing to grant his motion to suppress the evidence. The defendant reasons that the search warrant was the result of an illegal arrest, and alleges that the officers' entry into and seizure of the bar and search of its contents was illegal because it was not based on probable cause. We disagree.
The legality of the "arrest" is immaterial in this case, and we do not address this issue, because the discovery of the evidence seized did not result from Duron's alleged "arrest." The discovery of the evidence resulted from an "independent source," that is, information provided by the confidential informant. See: Segura v. U.S., 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed. 2d 599 (1984). It is clear the police officers had a right to enter the lounge, a public place, and question its occupants regarding alleged illegal activity occurring there. It is likewise clear that no information secured from either Duron or Creagh was used as the basis for securing the search warrant. A reading of the application for the search warrant indicates the warrant resulted from information supplied by the CI which was verified by the independent investigation of the officers involved. Thus, the issue is simply whether the warrant was based upon probable cause.
The state and federal constitutions protect persons against unreasonable searches and seizures. U.S. Const. 4th Amend.; La. Const. Art. 1, Section 5. A search warrant shall not issue except upon a showing of probable cause. U.S. Const. 4th Amend; La. Const. Art. 1, Sec. 5. La. C.Cr.P. Art. 162. In Illinois v. Gates, the United States Supreme Court adopted the "totality of the circumstances" test for determining whether probable cause exists for the issuance of a search warrant. 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In discussing its rejection of the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Court, in Gates, supra 103 S.Ct. at 2328-2330, stated:
This totality-of-the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip....
Moreover, the "two-pronged test" directs analysis into two largely independent channels-the informant's "veracity" or "reliability" and his "basis of knowledge." See nn. 4 and 5, supra. There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. See, e.g., Adams v. Williams, supra [407 U.S. 143], at 146-147, 92 S.Ct. [1921], at 1923-1924 [32 L.Ed.2d 612 (1972)]; United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. See United States v. Sellers, 483 F.2d 37 (CA5 1973). Likewise, if an unquestionably honest citizen comes forward with a report of criminal activitywhich if fabricated would subject him to criminal liabilitywe have found rigorous scrutiny of the basis of his knowledge unnecessary. Adams v. Williams, supra. Conversely, even if we entertain his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case. Unlike a totality-of-the-circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip, the "two-pronged *167 test" has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.
Thus, at the time of the presentation of the application for the search warrant, the magistrate must make a practical commonsense decision whether, given all the circumstances set forth in the affidavit, there is a "fair probability" that evidence of a crime will be found in a particular place. State v. Lingle, 436 So.2d 456 (La.1983), citing Illinois v. Gates, supra. Moreover, the role of the reviewing court is to insure that the magistrate had a "substantial basis" for concluding that probable cause existed. State v. Lingle, supra. The magistrate's determination of probable cause, prior to issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magistrate's assessment to be reasonable. State v. Rodrigue, 437 So.2d 830 (La.1983).
In this case the reliability of the informant was demonstrated in the affidavit to the search warrant. The information provided by this informant has lead to arrests and convictions in the past and allowed investigative insight into the illicit marketing of drugs within the City.
The information provided by the informant was also reliable. That is, the informant advised police that Eftain Duron was dealing cocaine from the Blue Lagoon Lounge at 2112 St. Claude Avenue, an establishment in which he had a financial interest. The informant also stated that the bulk of Duron's drug supply was located at his residence at 2818 North Rampart. Further, he told the police that Duron would divert some of his potential buyers to Royal and Marigny Streets where he would engage in drug transfers. The informant also advised that on the day before defendant's arrest he had met with him at the lounge and purchased cocaine. The cocaine was produced from a locker cabinet near the downtown side of the entry. He then gave them a description of defendant's dress and told them defendant had parked his truck outside the lounge.
Through independent investigation the police were able to verify Duron's description and they viewed his truck parked where the informant had stated. They also followed him from the bar to Royal and Marigny Streets where they observed him engage in what appeared to be a drug transaction. During this time the officers observed this defendant stop at the North Rampart Street address which the CI had told them was Duron's residence. Upon entering the Blue Lagoon Lounge the officers observed the cabinet in the location of the bar where they were told it would be.
Therefore, considering the reliability of the informant and the overall reliability of his information, as partially verified by the investigating authorities, we conclude that under the totality of circumstances test, the magistrate had a substantial basis for concluding that probable cause existed for the issuance of the search warrants. Accordingly, the trial judge correctly denied the defendant's motion to suppress the evidence in this case. This assignment lacks merit.
In his second assignment of error, Duron contends the trial court erred in not granting his motion for a judgment of acquittal which was lodged at the close of the State's case.
Louisiana Code of Criminal Procedure Article 778 provides for a motion for acquittal:
Art. 778. Motion for acquittal
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.

* * * * * *
This court in State v. Price, 454 So.2d 377 (La.App. 4th Cir., 1984) utilized the standard expressed by the Supreme Court in State v. Hargrave in reviewing such a motion. 411 So.2d 1058 (La.1982). In Hargrave, supra the Court held that "the denial *168 of such a motion may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion."
In this case it was the responsibility of the State to prove that the defendant exercised actual or constructive possession of cocaine with intent to distribute.
The State presented the testimony of the two police officers who were involved in this case, as well as the cocaine and monies seized from a locker in the bar owned by the defendant and over which he had dominion and control. The officers witnessed an apparent drug transaction involving Duron, the elements of which verified facts given to them by the CI. Such evidence was sufficient for the court to conclude that the State had presented some evidence of the defendant's commission of the crime charged. Under these circumstances, the trial court correctly denied the defendant's motion for a judgment of acquittal. This assignment lacks merit.
For the reasons assigned the conviction and sentence of Eftain Duron are affirmed.
AFFIRMED.

*169 
*170 
*171 
*172