619 So.2d 650 (1993)
STATE of Louisiana, Relator,
v.
Sterling WILLIAMS, et al., Respondents.
No. 92-K-1528.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1993.
*651 Harry F. Connick, Dist. Atty., Charles Lane, Asst. Dist. Atty., Karen Kirshbom, New Orleans, for relator.
Clyde D. Merritt, New Orleans, for respondent, Sterling Williams.
Frank G. DeSalvo, Venus Masakowski, New Orleans, for respondents, Andrea Brown & Steven LeBlanc.
Before CIACCIO, WARD and ARMSTRONG, JJ.
PER CURIAM.
We grant the application for supervisory writs filed by the State to consider the correctness of a ruling by the trial granting defendants' Motion to Suppress the Evidence. The defendants, Sterling Williams, Steven LeBlanc, and Andrea Brown, were charged by bill of information on January 10, 1991, with possession of cocaine, a violation of LSA-R.S. 40:967(C). All defendants were released on bond the next day. On January 23, 1991, all defendants entered pleas of not guilty.
The defendants apparently filed a Motion or Motions to Suppress Evidence although the motion(s) is (are) not attached to the writ application and there is no notation on the docket master that a motion(s) was (were) filed. On December 20, 1991, a hearing was conducted wherein Officer Charles Watkins testified. The trial court requested memoranda of law from the defendants and the state and on February 4, 1992, granted the Motion to Suppress Evidence. The docket master indicates that the trial court granted the state until April 13, 1992 to file the writ application. This writ application was filed on July 7, 1992 *652 without the Motion(s) to Suppress Evidence, any minute entries, or the memoranda submitted to the trial court. The state has subsequently supplemented the application with the transcript of the trial court's ruling and the memorandum of law submitted to the trial court opposing the motion to suppress evidence.

FACTS
On October 30, 1990, Detectives Louis Dabdoub and Charles Watkins met with a reliable confidential informant who, according to the information in the search warrant, had provided information in the past which lead to arrests and convictions of narcotic traffickers. The CI told the officers that within the past twenty-four hours he had been inside 2415 Peniston Street and saw two brothers, Shelton and Bruce Williams, dealing narcotics from within the residence. He told the officers that the brothers sold cocaine for $300 for a quarter ounce. The CI also told the officers that the Williams brothers were very cautious and would deliver the narcotics to their customers rather than sell the contraband from their house. The CI also identified the subjects' vehicles: a red Jeep Cherokee, a yellow Cadillac, and a grey Buick.
On the same date, the detectives set up a surveillance of 2415 Peniston Street. The detectives and the CI arranged for the CI to signal the detectives by stepping out the house and taking off his hat before a drug deal would occur. At about 1:30 P.M., the CI left the residence and signaled the detectives. A short while later, two subjects, one of whom was later identified as Sterling Williams, left the house and entered the grey Buick. Sterling Williams was carrying a brown paper bag and the officers followed the Buick until it stopped at the intersection of Harmony and LaSalle Streets. A subject was standing at the corner, and after a brief conversation, Sterling Williams handed the subject the brown paper bag. The subject walked "nervously" to a parked blue Blazer. The detectives followed the grey Buick which returned to 2415 Peniston Street. Both subjects entered the residence. A short time later, the CI left the residence, met with the detectives, and informed them that immediately before he signaled the detectives, Sterling Williams went upstairs in the house and returned saying he had to make a deal.
Two days later, the same detectives and Detectives Imbraguglio and Hessler established a surveillance of 2415 Peniston Street. At approximately 1:45 P.M., the CI exited the residence and gave the officers the signal indicating that a drug deal was about to occur. About five minutes later, two subjects, one of whom was Sterling Williams, left the residence. Sterling Williams entered the yellow Cadillac and the other subject entered the grey Buick. The detectives followed both vehicles and watched as the grey Buick parked on Dryades Street and the Cadillac circled the block. The driver of the grey Buick, later identified as James Gurley, handed an object to a subject who was standing on Dryades Street. The detectives then moved in and apprehended Sterling Williams and James Gurley.
The officers decided to secure 2415 Peniston Street because of the possibility that additional occupants of this residence might learn of the officers' actions and destroy evidence. The officers entered the residence through the bottom right portion of the house and secured the residence until a search warrant could be obtained. The officers saw a loaded 9mm pistol lying in plain view in one of the rooms. A search warrant was obtained several hours later and a search of the residence revealed two bags of cocaine in a drawer on the lower left side of the residence. Also found were five pieces of crack cocaine behind a clock, and a semi-automatic handgun found in the downstairs right portion of the house. Additionally, $2,300.00 was found in a safe in the attic of the residence. A narcotics dog indicated that the money was contaminated with narcotics.
Detective Charles Watkins testified at the Motion to Suppress Hearing that 2415 Peniston Street was a large, two-story building which "turned out to be four parts of the residence but all one residence." The detective did not mention having to *653 enter different parts of the residence through locked doors. Detective Watkins testified that although the arrest report indicated that one of the defendants, Mr. Steve LeBlanc, resided at 2415½ Peniston Street, that information was supplied by another officer. Detective Watkins testified that he believed Steve LeBlanc resided at 2415 Peniston Street.
The state complains that the trial court erred in granting the Motion to Suppress Evidence. It is unclear from the trial court's ruling whether the trial court believed that the warrant did not establish probable cause to search the house, whether the officers were not justified in entering and securing the residence prior to the warrant being obtained or whether the trial court believed that the warrant did not particularly describe the place to be searched. Accordingly, we will address each of these issues.

SECURING THE RESIDENCE BEFORE THE WARRANT WAS OBTAINED
Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. U.S. Constitution, Amendment 4; Louisiana Constitution Article 1 § 5; C.Cr.P. Article 162; State v. Brady, 585 So.2d 524 (La.1991). A recognized exception to the warrant requirement for entry into a building is a quick search of the premises to determine the presence of persons in need, the presence of a perpetrator who might still remain on the premises, or to prevent the destruction of evidence. Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984); United States v. Rubin, 474 F.2d 262 (3rd Cir.1974); State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988).
Probable cause alone does not justify the entry into an area otherwise protected by the Fourth Amendment of the United States Constitution and the Louisiana Constitution, Article 1 § 5. There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320 (La.1979.). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that without those exceptional circumstances would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that may cause injury to the officers and the public, and the destruction of evidence.
State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
Exceptions to the warrant requirement are carefully drawn and there must be a showing by those who seek exception that the exigencies of the situation make the search imperative. State v. Welch, 449 So.2d 468 (La.1984). The burden is on the government to show that the search falls within one of the exceptional situations. Vail v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Tatum, 466 So.2d 29 (La.1985).
In State v. Woods, 591 So.2d 1323 (La. App. 4th Cir.1991), like the present case, officers received information that a person was selling cocaine from a particular residence. The officers' surveillance corroborated this information. The officers arrested the suspect outside the house, then went inside the house "to secure it." The trial court suppressed evidence seized from inside the residence finding that the officers had more than three days to obtain a search warrant and "there was no evidence which substantiates a reasonable belief that any other person was in the residence." This Court granted writs and reversed the decision of the trial court reasoning that the defendant's brother (who the officers had seen one week earlier inside the residence) might be in the residence and that crack cocaine found inside the residence could easily have been destroyed.
In Roebuck, police officers received a tip that Roebuck and his girlfriend were using a certain motel room to store large amounts of drugs which were then taken to other locations for sale. The officers conducted surveillance for several days observing *654 activities consistent with drug trafficking. Officers saw Roebuck and his girlfriend leaving the apartment carrying a brown paper bag. The suspects were stopped and arrested and the officers then entered the room "to secure it" while awaiting the issuance of the warrant. No contraband was discovered in plain view and the room was not searched until after the warrant was issued.
On review of the trial court's denial of their motion to suppress the evidence, the defendants argued that the officers' warrantless entry tainted the subsequent search of the room pursuant to the warrant. This Court disagreed, noting that the officers were justified in entering the room because of the possibility that another person may have been in the room, may have seen Roebuck and his girlfriend being arrested, and may have attempted to leave through a back door with the remaining drugs. This Court came to this conclusion even though the officers could give no basis for the belief that another person was in inside the motel room.
In United States v. Rubin, 474 F.2d at 268-269, the court listed circumstances which might lead police officers to reasonably conclude that evidence would be destroyed or removed before they could secure a search warrant:
1) The degree of urgency involved and the amount of time necessary to obtain a warrant;
2) Reasonable belief that the contraband is about to be removed;
3) The possibility of danger to police officers guarding the site of the contraband while a search warrant is sought;
4) Information indicating the possessors of the contraband were aware that the police were on their trail; and
5) The ready destruction of the contraband and the knowledge and efforts to dispose of narcotics and escape are characteristic behavior of persons engaged in narcotics traffic.
(See also Salken, Balancing Exigency And Privacy In Warrantless Searches To Prevent Destruction Of Evidence: The Need For A Rule, 39 Hastings, L.J. 283, 287 (1988).)
In the instant case, Detective Watkins testified that the other occupants of the residence may have destroyed the evidence after becoming suspicious when the arrested men did not return. The search of the house did not occur until after the warrant was obtained. The CI had provided information that additional quantities of cocaine were located in the house, and two days earlier had witnessed Sterling Williams walk upstairs stating that he was making a deal and would return shortly. The officers' surveillance revealed activity consistent with drug trafficking. Therefore, we find that the officers were justified in entering and securing the premises to prevent the destruction of evidence. The trial court would have been in error to grant the Motion to Suppress on the grounds that the officers were not justified in entering the residence to secure it prior to the issuance of the search warrant.

PROBABLE CAUSE TO ISSUE THE SEARCH WARRANT
The exclusionary rule reaches not only evidence reached as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree." Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). However, evidence should not be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).
A search warrant may issue "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant". LSA-C.Cr.P. art. 162. Probable cause exists when "the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched." State v. Duncan, 420 So.2d 1105, 1108 (La.1982). The facts relied upon by the *655 magistrate must be contained within the "four corners" of the affidavit. State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir. 1988).
An appellate court, reviewing the magistrate's decision to issue a search warrant, should consider whether the totality of the circumstances indicated that there was a "fair probability" that contraband will be found in the place to be searched. State v. Deal, 578 So.2d 994 (La.App. 4th Cir.1991). The duty of the reviewing court is to simply ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. Roebuck, supra.
In the present case, the search warrant application includes these facts:
1.) A credible, confidential informant informed the detectives that quantities of cocaine were being sold from 2415 Peniston Street by several people who were described by the CI.
2.) The informant personally observed the contraband in this residence within seventy-two (72) hours of providing the information to the police.
3.) Police officers' independent surveillance of this residence on two occasions indicated activity consistent with drug trafficking.
We find that the information supplied from the credible informant, based on personal information, which was corroborated by independent police surveillance, established probable cause in this case to issue the search warrant. State v. Duron, 524 So.2d 164 (La.App. 4th Cir.1988). The evidence seized in the house was not the direct or even remote product of the officers' illegal entry into this residence, but was seized as a result of an independent source, the search warrant. Segura, 104 S.Ct. at 3385-3386; Duron, 524 So.2d at 167; Roebuck, 530 So.2d at 1250.
The trial court would have been in error if it granted the Motion to Suppress the evidence based on a lack of probable cause to issue the search warrant.

THE DESCRIPTION OF THE PLACE TO BE SEARCHED
The search warrant in the present case describes the residence to be searched as a two-story house, located at 2415 Peniston Street. Detective Watkins described this house as a large house with four separate parts, but all part of one residence. Detective Watkins testified that contraband was seized from both the left and right side of the downstairs sections of the house. The officer did not testify that there were any obstructions to movement through all parts of the residence. The defense attorney, however, argued to the trial judge that the officers "had to go through a locked door into another portion of the house." Counsel argued that they were separate apartments bearing two municipal numbers.
However, as noted above, there was no testimony regarding two separate municipal numbers or a locked door separating the different sections or apartments of the residence. Accordingly, there is no evidence that the search warrant did not describe with sufficient particularity the place to be searched. The trial court would have been in error if had granted the Motion to Suppress based on the failure of the warrant to describe with particularity the place to be searched.
For the foregoing reasons, we reverse the judgment of the trial court granting the Motion to Suppress the evidence and remand this case for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.