JOY COSSICH LOBRANO, Judge.
I,Kenneth Lewis appeals his conviction and sentence for simple possession of cocaine, attacking the trial court’s denial of his motions to suppress the evidence and statements. For reasons that follow, we affirm the appellant’s conviction and sentence.
The State of Louisiana charged Kenneth Lewis on December 28, 2011, with one count of possession with the intent to distribute cocaine, a violation of La. R.S. 40:967 B, a charge to which he subsequently pled not guilty.[1] The court heard and denied Lewis’ motions to suppress the evidence and statements on June 1, 2012. Lewis sought supervisory review in this court, which this court denied. State v. Lewis, unpub. 2012-1045 (La.App. 4 Cir. 7/19/12). On October 29, 2012, a twelve-person jury found him guilty of simple possession of cocaine, a violation of La. R.S. 40:967(C). The court sentenced Lewis on November 2, 2012, to five years at hard labor, suspended, and placed him on five years active probation. The court subsequently granted his motion for appeal.
^Kenneth Lewis was convicted of possession of cocaine pursuant to his arrest on November 16, 2011, which arose out of a controlled narcotics purchase. Detective Glenn Washington testified at trial that on that date, he was working as an undercover officer. He testified that as he was driving in the 2200 block of Urquhart Street, he saw Kenneth Lewis and Jerome Lewis standing in front of a double at 2252-54 Urquhart. Det. Washington testified that he pulled over and made a motion of smoking, putting his fingers to his mouth, which he explained indicated that he wanted to purchase some marijuana. Jerome approached the passenger side of the detective’s undercover vehicle and said that “he,” whom the detective believed meant Kenneth, did not have any weed. Det. Washington then asked if he had any “hard,” which he explained was street slang for crack cocaine. Jerome responded that he would see if “he” had any, and the two men agreed on a price of $40. Jerome walked over to Kenneth. The two men spoke and then both walked inside the residence at 2254 Urquhart. The men almost immediately came back outside, and while Kenneth remained in front of the double, Jerome walked back to the undercover vehicle and gave Det. Washington four rocks and several smaller pieces of what appeared to be crack cocaine. Det. Washington then gave Jerome $40 consisting of one $20 bill and two $10 bills. Jerome walked away from the vehicle, and Det. Washington drove away, signaling the backup officers that the deal had been completed.
Det. Washington testified that the entire transaction was captured on videotape *655 from a camera inside his vehicle. The DVD of the transaction was played for the jury, and Det. Washington testified that the DVD showed Jerome handing him several pieces of crack cocaine in exchange for money. Det. Washington testified that earlier on the morning of the transaction, he had ^photocopied the money that he later used to buy the cocaine from Jerome. He admitted that neither Kenneth nor Jerome was the target of any investigation that day; instead, Det. Washington merely drove down Urquhart Street to see if he could conduct any narcotics transactions.
Det. Washington testified that Kenneth did not give him any drugs or receive any money from him, and Kenneth did not approach his vehicle. Det. Washington stated that he left after conducting the transaction and was not present when more cocaine was seized from Kenneth’s residence. He also did not see Jerome give any money to Kenneth.
Detective Ricky Jackson testified that he observed the drug transaction between the older man (Jerome) and Det. Washington from a position about a block away. He stated that he was equipped with a microphone, and a cameraman was riding in the back seat of his vehicle as part of a taping of a COPS episode for Spike TV. Det. Jackson described the drug transaction, noting that he saw Jerome walk up to the undercover vehicle, speak with Det. Washington, and then speak with a younger man with dreadlocks (Kenneth), who was standing on the sidewalk. He watched as Kenneth and Jerome went inside Kenneth’s residence and then saw them come back outside. Jerome then returned to the undercover vehicle. Det. Jackson stated that Det. Washington radioed when the transaction was completed and drove from the scene. Det. Jackson then saw Jerome walk back to Kenneth, who was talking with a female who was standing next to a white vehicle. He testified that Jerome then went back to Kenneth and gave him an unknown object, which Det. Jackson thought was the money that he had received from Det. Washington.
|4Pet. Jackson ordered other officers to detain Jerome and Kenneth, describing both men. He arrived after other officers had detained the suspects, who were by then handcuffed and sitting on the steps of the other side of the double, where Kenneth’s aunt lived. Det. Jackson advised the men of the nature of the investigation and told them what he had seen. The officers got the keys to Kenneth’s apartment, but the door was unlocked, and they entered to secure the scene while they obtained a warrant. Det. Jackson stated that when he entered the apartment, he saw several rocks of what appeared to be crack cocaine lying on the top shelf of a black iron bookcase right inside the door. Det. Jackson stated that he went back outside and spoke with Kenneth, who stated that he had just come from the apartment. Det. Jackson grabbed Kenneth’s arm and took him inside the apartment, showing him the cocaine on the shelf. Det. Jackson testified that Kenneth then agreed to consent to a search of the residence, signing a consent form after Det. Jackson read it to him, and Kenneth stated that he understood the form. The officers then searched the apartment, finding a loaded gun magazine, a gun box, a box of sandwich bags, and a razor blade.
Det. Jackson testified that Kenneth started arguing with another officer, and he took Kenneth out of the apartment and put him in a police car, telling him to calm down. He stated that they spoke about the situation, and the detective told Kenneth that he would love to walk around with $1000 in his pocket, but he would not do that because of his job. He testified *656 that Kenneth then responded: “I understand. You’re right. You know, I have kids, you know, and I’m doing this and it’s hard to find a job ... You’re right, I fucked up.” The State then played the DVD of the footage from the Spike TV show that included Det. Jackson’s observation of the drug transaction, the detention of both men, the search of |fiKenneth’s apartment, and Det. Jackson’s conversation with Kenneth while Kenneth was sitting in the police car. The footage shows that both men were detained in front of the other side of the double, where Kenneth stated his aunt lived. Officers briefly entered that apartment after a woman responded to their knock on the door, but they quickly came back outside. Although Kenneth at first denied that he lived at the apartment, he said something that made Det. Jackson believe that he admitted that he had just come from the apartment, and at that point, Det. Jackson walked him into the apartment. The video also shows that a female was present when the suspects were detained, but the officers let her go soon thereafter.
Det. Jackson testified that Kenneth did not give any drugs to Det. Washington or receive any money from him. He reiterated that he saw Jerome give Kenneth what he surmised was the money he received from Det. Washington, and the arresting officers found this money on the ground right next to Kenneth when they detained him. He stated that the officers first entered the apartment to make sure there was no one inside who could destroy any evidence. Det. Jackson testified that during the search, Kenneth became involved in a heated exchange with another officer who berated him because he had a college degree and was selling drugs, and because Kenneth had a gun case and loaded magazine. He stated that he took Kenneth outside to calm him down. Det. Jackson noted that he did not advise Kenneth of his Miranda rights, but he testified that Det. Michel did so when the appellant was arrested, and Sergeant Sislo also advised him when they were inside the apartment.
Jerome admitted that he had several prior convictions for burglary and possession of stolen property. He also admitted that he pled guilty in the presentíase to a lesser offense and received an eight-year sentence in exchange for his testimony. He stated that on November 16, 2011, the undercover officer drove up to him and asked if he had any “hard.” Jerome stated that he told the officer that he had none, but he would ask his partner if he had any. He stated that he asked Kenneth if he had any crack cocaine, and then he and Kenneth went inside Kenneth’s apartment where he got the crack from Kenneth. He then took it back outside and gave it to the undercover officer in exchange for money, which he gave to Kenneth. On cross-examination, Jerome stated that he was no relation to Kenneth. He insisted that his testimony was true and that he pled guilty to the reduced charge in order to do his time and move on with his life. He insisted on redirect that Kenneth gave him the crack cocaine that he sold to the officer.
Detective Andrew Roecaforte participated in the search of Kenneth’s apartment. Det. Roecaforte seized the cocaine from a shelf in the living room. He stated that the cocaine was unpackaged and lying in plain view, and he took a baggie from a box of sandwich bags that was lying on a lower shelf to retrieve the cocaine. He stated that he seized a razor blade that was lying nearby. He also seized a letter from the District Attorney’s Office, addressed to Kenneth at that address, which involved a case of domestic violence. He explained, however, that the letter indicated that Kenneth was the victim of the incident.
*657 Corey Hall, a criminalist with N.O.P.D. and qualified as an expert in the field of narcotics analysis, testified that he tested the substance sold to Det. Washington and the substance seized from Kenneth’s apartment. He identified his report, which indicated that both substances tested positive for cocaine.
A review of the record reveals no patent errors.
|7By his first assignment of error, the appellant contends that the trial court erred by denying his motion to suppress the evidence seized from his home; he does not raise any argument as to the cocaine sold to Det. Washington or the money seized from him incidental to his arrest. He argues that the evidence adduced by the State did not prove that there were exigent circumstances to allow the officers to enter his apartment without a warrant, and without such circumstances, the officers’ entry was unlawful, thereby tainting their discovery of the crack cocaine, the box of sandwich bags, and the razor blade lying in plain view just inside the door. He further argues that he did not freely and voluntarily consent to a search of his residence.
Det. Washington was the only State witness who testified at the suppression hearing. His testimony at that hearing was consistent with the testimony he gave at trial. Additionally, he testified that he thought that the gun magazine was found in a back bedroom. He also stated that although he left just after the transaction was completed, he was told that the appellant, Kenneth, and Jerome were advised of their Miranda rights at the time they were arrested. He also testified that the door to the appellant’s apartment was left open, and the officers entered it to make sure there was no one inside who could destroy any evidence. He testified that after the officers came out of the apartment and told the appellant that they had seen the transaction between him and Jerome, the appellant admitted that he lived in the apartment, and he signed a consent to search form. Det. Washington testified that a search incidental to arrest of the appellant revealed that he had $547, $40 of which was the marked money from Det. Washington. He reiterated that when he drove off, he did not know if anyone else was inside the apartment.
|sOn cross-examination, Det. Washington stated that the appellant and Jerome were near each other but not standing next to each other when he drove up to them. He admitted that he did not see Jerome walk back to the appellant and give him the marked money because he had already driven away. He stated that a search incidental to Jerome’s arrest revealed no money or drugs. He also stated that when he asked Jerome if he had any “hard,” Jerome replied: “He got a couple of pieces of that,” referring to the appellant. He admitted that he did not see anyone else inside the house, nor did he see the appellant or Jerome motion to anyone inside, but he was not parked so that he could see inside through the door.
The defense called Erica Alphonse, the appellant’s girlfriend, who was present at the arrests. She denied that any drug transaction occurred. She stated that she was sitting outside the residence with the appellant and Jerome, and at some point she saw the appellant and Jerome enter the appellant’s apartment, but she did not see Jerome give the appellant any money. She insisted that she was sitting on the porch of the other side of the double when the officers arrived. She explained that the appellant’s aunt and cousin lived on that side of the double. She insisted that the officer knocked on doors in the area, but only the appellant’s aunt opened her door. She insisted that the door to the *658 appellant’s apartment was closed, and the officers used a key to open the door and enter. She was not arrested. On cross-examination, she stated that she did not know Jerome and only saw him on that day. She admitted that she saw Jerome go to the undercover car, and then both Jerome and the appellant went inside the residence. She also admitted that she was convicted of bribery in 2010. She insisted that no one else was inside the appellant’s apartment when the officers entered.
|9The defense also called Zina Jackson, who identified herself as the appellant’s cousin and who lives in the other side of the double. She testified that on the day that the appellant was arrested, she was sleeping and awoke to a knock on her door. She answered the door and saw the appellant and another man handcuffed outside the apartment. She testified that she told the officers that neither man lived in her apartment and that she did not know the other man. She admitted that she did not know what happened outside the apartment before the police awakened her.
As per La.C.Cr.P. art. 703(D), the State has the burden of showing any evidence seized in the absence of a warrant was lawfully seized. State v. Wells, 2008-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581. It is well-settled that an appellate court should review a trial court’s ruling under a deferential standard with regard to factual determinations, while legal findings are subject to a de novo standard of review. State v. Hunt, 2009-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751; State v. Hampton, 98-0331, p. 18 (La.4/23/99), 750 So.2d 867, 884. Moreover, “a trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion.” Wells, 08-2262, p. 5, 45 So.3d at 581. As noted by the Court in State v. Thompson, 2011-0915, pp. 13-14 (La.5/8/12), 93 So.3d 553, 563:
The analysis may be further broken down into the component parts of the trial court decision. “When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings.” Wells, 2008-2262, p. 4; 45 So.3d at 580; State v. Hunt, 2009-1589, p. 6 (La.12/1/09); 25 So.3d 746, 751. Legal findings or conclusions of the trial court are reviewed de novo. Id.; State ex rel. Thibodeaux v. State, 2001-2510, p. 1 (La.3/8/02); 811 So.2d 875.
Because the evidence was seized in this case without a warrant, the State bore the burden of showing that it was lawfully seized.
The appellant first argues that the officers’ entry into his apartment, during which they saw the cocaine in plain view, was unlawful. Police officers may enter a house without a warrant if they have probable cause to believe there is contraband inside and exigent circumstances that require immediate entry. State v. Jones, 2002-1931, p. 5 (La.App. 4 Cir. 11/6/02), 832 So.2d 382, 384; State v. Page, 95-2401, p. 10 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709. In State v. Page, this court described exigent circumstances as:
exceptional circumstances which, when coupled with probable cause, justify an entry into a “protected” area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the pub- *659 lie, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
Page, 95-2401, p. 10, 680 So.2d at 709. See also State v. Fournette, 2008-0254 (La.App. 4 Cir. 7/2/08), 989 So.2d 199. In State v. Wright, 2002-2354, p. 5 (La.App. 4 Cir. 6/18/03), 850 So.2d 778, 781, this Court listed factors set forth in United States v. Rubin, 474 F.2d 262, 268-269 (3rd Cir.1973), for a reviewing court to consider in determining if an officer was justified in making a warrantless entry: “(1) the immediacy of the situation and the length of time it would take to obtain a warrant; (2) a reasonable belief that evidence would be moved or destroyed; (3) the danger to any officers who would be guarding the evi-denceJLywhile the warrant was being obtained; (4) any information that the person who is in possession of the evidence knows that the authorities know he is in possession; and (5) the ability of the person to destroy the evidence and/or escape.” See also State v. Fournette, supra. Probable cause alone will not allow an officer to enter a residence; it must be accompanied by exigent circumstances. See Kirk v. Louisiana, 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002); Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); State v. Fournette, supra; State v. Jones, supra.
The appellant argues that there were no exigent circumstances for the officers to enter his apartment because both he and Jerome, the only person involved in the sale to Det. Washington, were apprehended outside the apartment. He points out that the only other person found on the scene, Ms. Alphonse, was also outside, and the officers did not give specific reasons for their belief that someone else might have been inside the apartment that could have destroyed any evidence.
In support, appellant cites State v. Marley, 2006-0317 (La. App 4 Cir 11/8/06), 945 So.2d 808, where this court found no exigent circumstances for the officers’ entry. The officers had a tip of a suspicious person involving a possible theft at the defendant’s building. Id. at p. 4, 945 So.2d at 811. When they arrived, they saw the defendant and her friend leave her apartment and jump the fence that surrounded the building. The officers stopped the women and found that the defendant’s identification had a different address. The defendant told the officers that she lived in the apartment but did not have keys to the door or to the gate. The officers arrested her, went to the apartment, whose door was slightly open, and entered. Id. Inside they saw drugs lying in plain view. Id. at p. 2, 945 So.2d at 810. One officer testified that he entered the apartment to see if anyone inside had 112been harmed. Id. at p. 4, 945 So.2d at 811. On appeal, this court reversed, finding that there was no probable cause to believe the apartment contained contraband nor was there any basis for the officers’ entry to aid of any persons who may have been inside and needed help. Id. at pp. 8-9, 945 So.2d at 814.
Marley is distinguishable from the facts of the present case in that there was no basis for the officers in that case to believe that the apartment contained any evidence or that there were people inside who needed help. By contrast, here the officers watched Jerome enter the apartment after telling Det. Washington that he had no “hard” but would see if “he” had some. Jerome and the appellant entered, and when they exited soon thereafter, Jerome returned to Det. Washington and sold him the cocaine. Thus, the officers had probable cause to believe there was cocaine inside the apartment. More importantly, as admitted by the appellant, the officers apprehended him and Jerome right outside *660 the apartment, and anyone inside could have seen the arrests and destroyed any cocaine that may have remained inside the apartment.
The other cases cited by the appellant do not support his argument. In State v. Warren, 2005-2248 (La.2/22/07), 949 So.2d 1215, the main thrust of the Court’s opinion was the issue of whether the officers were justified in conducting a warrantless search of a duffel bag found in a hotel room that the officers entered. In reaching this issue, the Court noted that the State had shown exigent circumstances to enter the room because the defendant told the undercover officer that he shared the room with two other men who were in the bar and would shortly return. Id. at p. 13, 949 So.2d at 1226.
In State v. Kirk, 2000-0190 (La.App. 4 Cir. 11/13/02), 833 So.2d 418, this court found no exigent circumstances because the officers’ detention of the buyer |lsof drugs occurred a block away from the apartment where he bought them, and there was no evidence that there was anyone on the scene of the detention who could have alerted anyone inside the residence. Likewise, in State v. Jones, 2002-1931 (La.App. 4 Cir. 11/6/02), 832 So.2d 382, the other person involved in the drug sales was arrested approximately five blocks from the defendant’s residence, and there was no indication that that person was expected back at the residence. In addition, the officers had already begun typing an affidavit for a search warrant due to other activity they had observed from the defendant’s apartment on previous days, and this court found that there was no reason why the officers could not have already obtained the warrant. Id. at p. 6, 832 So.2d at 387.
In the matter sub judice, unlike in Jones and Kirk, the arrests of the appellant and Jerome occurred directly in front of the other side of the double from the appellant’s apartment. Thus, the officers had a justifiable belief that if someone were inside, it was quite likely that the person would have been alerted to the arrests and could have destroyed the remaining cocaine.
In its response, the State cites State v. Woods, 591 So.2d 1323 (La.App. 4 Cir.1991), where this court found that the officers had exigent circumstances to enter the defendant’s residence. After receiving a tip of drug sales and conducting a surveillance of the residence, from which they saw drug sales, the officers saw the defendant leave the residence. As he passed their car, he looked at them and then sped away. The officers stopped the defendant and returned him to his apartment, which they entered to secure while they obtained a search warrant. An officer testified that they entered because they were afraid that if someone was inside the house and learned of the defendant’s arrest, that person could possibly destroy any remaining drugs. This court found that the entry was justified because [14the officers could not be sure that there was no one inside the house. Id., 591 So.2d at 1325. This court also noted that the defendant’s girlfriend lived in the apartment. Id., 591 So.2d at 1324.
In State v. Williams, 619 So.2d 650 (La.1993), also cited by the State, the officers received a tip concerning two brothers selling drugs from a residence, which was corroborated by surveillance. The officers stopped both brothers while they were away from the residence, and then they entered it to secure it. This court found the entry justified because other occupants could have destroyed any remaining drugs when the defendants did not return. Id., 619 So.2d at 654.
In other cases, this court has found exigent circumstances existed where the area *661 entered was rented by someone other than the defendant, indicating that there were possibly other people who could destroy contraband, State v. Page, 95-2401 (La.App. 4 Cir. 8/21/96), 680 So.2d 700; or where someone alerted the defendant to the presence of officers during a surveillance, State v. Wright, 2002-2354 (La.App. 4 Cir. 6/18/03), 850 So.2d 778; or where there was a possible third suspect who had witnessed the defendant’s arrest at his car, State v. Roebuck, 530 So.2d 1242 (La.App. 4 Cir.1988); or where the circumstances of a long-range investigation of the defendants showed that there was a distinct possibility that drugs would be destroyed due to the past caution shown by those participating in the drug enterprise, State v. Tate, 623 So.2d 908 (La.App. 4 Cir.1993).
Our review of the line of cases on this issue shows that courts have upheld war-rantless entries into protected areas where there have been arrests or detentions directly in the area where anyone who might be inside could see the arrests or detentions. Here, both the appellant and Jerome were arrested in front of the other side of the double from the appellant’s apartment. The appellant contends that the | indoor was locked when the officers entered. Although the door was open, it was unlocked. Nonetheless, we conclude that this factor would not play any part in determining whether there were exigent circumstances to enter the apartment; either way, the officers had a justifiable belief that anyone inside the apartment could see the arrests and dispose of any remaining cocaine. Contrary to the appellant’s assertion, the cases discussed above show that the fact that the officers did not specify a basis for this belief would not defeat a finding of exigent circumstances. Given the circumstances of this case, we find that the State showed exigent circumstances for a warrantless entry into the appellant’s apartment.
The appellant next argues that because the officers’ entry was unlawful, they could not seize the cocaine, the sandwich bags, and the razor blade that they found lying in plain view. However, because of our conclusion that the entry was lawful, there is no merit to this claim. In State v. Jones, 2002-1171, p. 10 (La.App. 4 Cir. 6/26/02), 822 So.2d 205, 211, this court noted that the plain view exception requires that an officer have a prior justification for being in an area where he observes an object that is “immediately apparent” to him without close inspection as contraband. See also State v. Smith, 96-2161, p. 3 (La.App. 4 Cir. 6/3/98), 715 So.2d 547, 549. Once the officers entered the apartment, they saw the crack cocaine and the other items associated with drug distribution lying on the shelves in plain view. These items were “immediately apparent” as contraband, and their seizure falls within the parameters of the plain view exception to the warrant requirement.
The appellant concludes this assignment of error by arguing that the State did not prove that he freely and voluntarily consented to the search of his apartment. Because the officers had probable cause to believe the apartment |1ñcontained cocaine and exigent circumstances existed to enter the apartment, we need not reach this issue with respect to the items seized from the shelves in the front room right next to the door. The record shows that the only other items that were seized were the domestic abuse letter from the District Attorney’s Office in a matter where the appellant was the victim, the loaded magazine, and the gun case. The letter would not be evidence of a crime or contraband, and thus it would not fall under the plain view exception to the warrant requirement. In addition, Det. Washington testi *662 fied at the suppression hearing that the magazine was seized from the bedroom, and the DVD shows that one of the officers found the gun case in a room that was behind the living room; in both cases, it is clear that they were in plain view. Thus, at least with respect to the letter, the loaded magazine, and the gun case, we must address the issue of consent.
This court discussed the standard for reviewing whether property was properly seized pursuant to the consent exception in State v. Hopkins, 2004-1268, pp. 10-11 (La.App. 4 Cir. 12/8/04), 891 So.2d 707, 714:
The State has the burden of proving valid consent. State v. Green, 376 So.2d 1249 (La.1979). The voluntariness of the consent must be determined based on the overall facts and circumstances of the case. State v. Edwards, 434 So.2d 395 (La.1983). A trial judge’s factual determination on this issue is entitled to great weight on appellate review. [State v.] Franklin, 95-1876 at p. 5, 686 So.2d [38] at 41 [ (La.1997) ]; See also State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132; State v. O’Shea, 97-0400 (La.App. 4 Cir. 5/21/97), 696 So.2d 115.
The appellant does not deny that he consented to the search; rather, he asserts that his consent was the result of the officers’ exploitation of their unlawful entry and discovery of the cocaine. He argues that his consent was coerced by the officers after they found the cocaine, told him he was going to jail, and took him 117inside the apartment. However, the officers had already told the appellant, when they initially found the cocaine inside the apartment, that he was going to jail. In addition, as discussed above, there were exigent circumstances for the entry, at which time the officers found the cocaine lying in plain view. Thus, there was no “illegality” that the officers exploited to get the appellant to agree to the search. Although the DVD does not corroborate Det. Jackson’s testimony that he read the appellant the consent form, the DVD shows that the appellant signed the consent form after the officers told him that he could sign it and allow them to search immediately, and he could “fight [them] in court,” or he could refuse and wait a few hours while they got a warrant. This advisement was not a “threat;” rather, it was an advisement of the option and what the consequences would be if he did not consent to the search. As such, there was no showing that the appellant’s consent was not voluntarily and freely given, or at least as voluntarily and freely given as anyone else who had been arrested and drugs had been found in his house.
In summation, the officers had probable cause to believe the appellant’s apartment contained more cocaine, and there were exigent circumstances to support their warrantless entry. Once inside, they saw the cocaine and packaging paraphernalia lying in plain view. In addition, there was no showing that the appellant’s consent to search was not freely and voluntarily given. The trial court did not err in denying the motion to suppress the evidence, and this claim has no merit.
By his final assignment of error, the appellant contends that the trial court erred by denying his motion to suppress his statements. He notes that although the DVD shows that while one officer started to advise him of his rights once he had been taken inside his apartment, the officer did not explain all of his rights, | isincluding the right to remain silent. He also notes that although Det. Jackson testified that another officer advised him of his rights when he was placed under arrest, this advisement is not contained on the DVD, and that officer did not testify as to what he actually advised the appellant. *663 He asserts that the State thus failed to prove that the statements he subsequently made to Det. Jackson once he was placed in the police car were freely and knowingly given. We disagree.
As per La.C.Cr.P. art. 703(D), the State had the burden of showing that the defendant’s statements were admissible. In addition, La. R.S. 15:451 provides: “[b]efore what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.” See State v. Gradley, 97-0641, p. 9 (La.5/19/98), 745 So.2d 1160, 1166; State v. Butler, 2004-0880, p. 4 (La.App. 4 Cir. 1/12/05), 894 So.2d 415, 418. As noted in State v. Vigne, 2001-2940, p. 6 (La.6/21/02), 820 So.2d 533, 537, in order for a statement made by a suspect in custody to be admissible at trial, police officers must advise the suspect of his Fifth Amendment rights prior to interrogating him. Generally, a trial court’s ruling on a motion to suppress a statement is entitled to great weight and will not be disturbed unless clearly unsupported by the evidence. Id. It is well-settled that an appellate court should review a trial court’s ruling under a deferential standard with regard to factual determinations, while legal findings are subject to a de novo standard of review. State v. Hunt, 2009-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751.
The statements that the appellant contends were unlawfully admitted were elicited while he was seated in the police car and speaking with Det. Jackson. When the detective told the appellant that he should have been using his college 1 indegree rather than selling drugs, the appellant replied: “Like I said, I got kids. You got situations you got to take care of. I ain’t frontin’ — I ain’t frontin’ [sic] on the situation. Y’all did what you had to do. I fucked up. It is what it is. I’m gonna lay down for it.” Det. Jackson testified that he arrived just after the detention and that another officer, Det. Michel, advised the appellant of his Miranda rights while they were outside prior to the appellant making the statement. Thus, the trial court properly denied the appellant’s motion to suppress his statements and properly found that the appellant was advised of and knowingly and freely waived his Miranda rights. This assignment has no merit.
We find that the trial court did not err in denying the appellant’s motion to suppress the evidence and motion to suppress his statements. Accordingly, we affirm the appellant’s conviction and sentence.
AFFIRMED.

. The bill also charged Jerome Lewis with one count of distribution of cocaine. The State subsequently amended the bill to charge him with attempted distribution; he pled guilty to the amended bill and was sentenced to serve eight years at hard labor as a multiple offender. He is not a party to this appeal.