STATE OF LOUISIANA         \*        NO. 2024-KA-0724

VERSUS                \*

                            COURT OF APPEAL

WILBERT D. JEFFERSON, JR.   \*

                            FOURTH CIRCUIT

                    \*

                            STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 553-339, SECTION "K"
Judge Marcus DeLarge
\* \* \* \* \* \*
**Judge Tiffany Gautier Chase**
\* \* \* \* \* \*

(Court composed of Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge Rachael D. Johnson)


Jason R. Williams
District Attorney
Parish of Orleans
Brad Scott
Chief of Appeals
Patricia Amos
Assistant District Attorney
619 South White Street
New Orleans, Louisiana
70119

      COUNSEL FOR THE STATE OF LOUISIANA

Mary Constance Hanes
Louisiana Appellate Project
P.O. Box 4015
New Orleans, Louisiana
70178-4015

      COUNSEL FOR DEFENDANT/APPELLANT

                      **MOTION TO DISMISS DENIED;**
                        **CONVICTIONS AFFIRMED;**
               **SENTENCES AFFIRMED IN PART;**
    **REMANDED IN PART FOR RE-SENTENCING**
                                **JUNE 30, 2025**

Defendant/Appellant, Wilbert Jefferson, Jr. (hereinafter "Mr. Jefferson"), seeks review of his convictions and sentences for manslaughter, felon in possession of a firearm and obstruction of justice. After consideration of the record before this Court and the applicable law, we deny the motion to dismiss Mr. Jefferson's appeal filed by Appellee, the State of Louisiana (hereinafter "the State"), and affirm Mr. Jefferson's convictions. However, finding his sentence for felon in possession of a firearm fails to include the statutorily mandated fine, we remand this matter to the district court to set the mandated fine. The remaining three sentences imposed by the district court are affirmed.

## Statement of the Case

On February 24, 2022, Mr. Jefferson was charged by a grand jury indictment with the following: (i) second degree murder committed with a firearm, in violation of La. R.S. 14:30.1 (Count 1); (ii) attempted second degree murder with a firearm, in violation of La. R.S. 14:(27)30.1 (Count 2); (iii) felon in possession of a firearm, in violation of La. R.S. 14:95.1(Count 3); and (iv) obstruction of justice in a homicide investigation, in violation of La. R.S. 14:130.1 (Count 4).

1

After a three-day jury trial, the jury found Mr. Jefferson guilty of the responsive verdicts of manslaughter as to Count 1 and aggravated battery as to Count 2. He was also found guilty of the crimes of felon in possession of a firearm and obstruction of justice. Mr. Jefferson's sentencing hearing occurred on January 4, 2024, where he was sentenced to twenty-five years imprisonment, without the benefit of probation, parole or suspension of sentence for his manslaughter conviction; ten-years without probation, parole or suspension of sentence for his aggravated battery conviction; twenty-years for his felon in possession of firearm conviction; and twenty-years for his obstruction of justice conviction.[1] The district court ordered each of Mr. Jefferson's sentences run concurrently and that he receive credit for time served. This appeal followed.

### Relevant Facts and Testimony

On August 9, 2021, Devante Jefferson (hereinafter "Devante") and his sister, Destiny Jefferson (hereinafter "Destiny"), were shot at a residence in the 2200 block of Allen Street in New Orleans, Louisiana. Both were transported to University Medical Center where Devante later died as a result of his gunshot wounds. Detective Walter Edmond (hereinafter "Detective Edmond"), with the New Orleans Police Department, was assigned to investigate the shootings and Devante's death.

Detective Edmond's investigation revealed that Devante and Destiny, cousins of Mr. Jefferson, were shot at a family gathering on August 9, 2021. As part of his investigation, he spoke with numerous family members who were present at the gathering. He discovered that Mr. Jefferson and Devante were

---

[1] The State of Louisiana and Mr. Jefferson objected to the district court's sentences, but failed to articulate reasons for their objections.

involved in three separate physical altercations on the day of the shooting. After the last altercation, Mr. Jefferson left the gathering, returned shortly thereafter, shot Devante and Destiny and then fled the scene. According to the ballistics evidence and eye-witness accounts, he determined that Mr. Jefferson used his brother's gun to shoot Devante and Destiny. Although Detective Edmond did not locate a firearm during the investigation; he concluded that Mr. Jefferson was the shooter. At some point after the shooting, Mr. Jefferson traveled to Texas, returned to Louisiana and was found living in a motel in Jefferson Parish. [2] He was arrested, pursuant to a warrant, on October 12, 2021.

Detective Edmond was the first to testify for the State at Mr. Jefferson's trial. His testimony included a full account of his investigation of the shootings and Devante's death. Sean McElrath, the forensic firearm specialist with the New Orleans Police Department, testified that his investigation led him to conclude that the shell casings found at the residence were all fired from the same firearm. The State also submitted a video, which was viewed by the jury, of Mr. Jefferson's interrogation following his arrest. Mr. Jefferson stated that he did not recall shooting Devante nor did he remember possessing a gun on the day of the shooting.

Dr. Cynthia Gardner (hereinafter "Dr. Gardner"), a pathologist with the Orleans Parish Coroner's Office, testified as an expert in forensic pathology. She stated that she performed Devante's autopsy and determined that his death was caused by multiple gunshot wounds. Dr. Gardner explained that Devante was shot

---

[2] When found in the motel room, Mr. Jefferson was in possession of a firearm and narcotics. It was determined that the firearm found in his motel room was not the one used to shoot Devante and Destiny.

twice and that both of the bullets entered and exited his body. She opined that Devante was shot while his back was facing the shooter.

Devante's mother, Keyoka Jefferson (hereinafter "Keyoka") testified for the State. She described Mr. Jefferson and Devante as having a very close relationship and "were more like brothers" than cousins. She testified that the two were co-defendants in an aggravated robbery, with a deadly weapon, in the state of Texas. Keyoka testified that on the day of the shooting, several family members spent the day celebrating the birthday of Mr. Jefferson's deceased mother and the family chartered a party bus to celebrate. All of the adults on the party bus, including Devante and Mr. Jefferson, were consuming alcohol. Keyoka explained that after exiting the party bus, Devante and Mr. Jefferson began fighting and were separated by other family members. She acknowledged that Devante and Mr. Jefferson often fought as it was a normal part of their relationship. Keyoka recounted that Devante and Mr. Jefferson were involved in three separate physical altercations on the day of the shooting. At first, she let Devante and Mr. Jefferson "fight it out" because it was a common occurrence. Keyoka explained that Mr. Jefferson initiated the physical altercations and provoked Devante to continue fighting. After the third fight, she testified that Mr. Jefferson left the house in a vehicle with several women. Keyoka stated that Mr. Jefferson returned to the residence, pulled a gun from his brother's waistband and shot Devante. When asked if Devante had a gun on him at any time during the day of the shooting, Keyoka answered in the negative. She testified that Devante and Destiny were transported to the hospital in a personal vehicle.

Devante's younger sisters, Destiny and Taiteona Jefferson (hereinafter "Taiteona"), also testified at trial. Their collective testimony echoed Keyoka's

testimony regarding the sequence of events that lead to Devante's death. Both sisters also acknowledged that Mr. Jefferson and Devante had a very close bond and that their relationship often involved physical and verbal altercations. Specifically, on August 9, 2021, Taiteona and Destiny stated that it was Mr. Jefferson who began the altercations by punching Devante after exiting the party bus. Devante's sisters also denied seeing Devante with a gun and stated that they traveled to the hospital in a personal vehicle in which Devante's body laid across their laps in the back seat. Taiteona also testified that she witnessed Mr. Jefferson shout Devante's name, pull the gun out of his brother's waistband and shoot her brother. After the shooting, the scene was very chaotic and Taiteona recalled her mother, Keyoka, punching Mr. Jefferson in the face after he shot Devante. On cross-examination, Taiteona conceded that all of the adults on the party bus were consuming alcohol and noted that Devante and Mr. Jefferson drank alcohol heavily throughout the day. Destiny also testified that she was hit by a stray bullet in her leg and fell to the ground near Devante.

Larry Crockett (hereinafter "Mr. Crockett"), a friend of Mr. Jefferson, testified for the defense.[3] He explained that he had known Mr. Jefferson for approximately six years and had only met Devante once prior to the day of the shooting. At trial, Mr. Crockett stated that he was on the party-bus with Mr. Jefferson, Devante and other family members. He explained that the majority of the adults were consuming alcohol, including Mr. Jefferson and Devante. He explained how Devante and Mr. Jefferson "got into" a verbal altercation when the party bus stopped at a convenience store. Mr. Crockett testified that Devante was upset with Mr. Jefferson "for not having his back" with the clerk and police at the

---

[3] Mr. Crockett testified by Zoom.

5

store. When asked about the physical altercations once they returned to the residence, Mr. Crockett testified that there were three separate altercations that were each "broken-up" by family members. He testified that the first altercation began when Mr. Jefferson interjected himself into a fight between Devante and a younger cousin, Brandon Allen. After the last altercation with Devante, Mr. Crockett stated that he saw Mr. Jefferson attempt to end the fight amicably, but Devante refused. He then testified that he saw Mr. Jefferson leave the gathering. When Mr. Jefferson returned, Mr. Crockett explained that Devante was packing his belongings in a black duffle bag. He then witnessed Mr. Jefferson grab his brother's gun and shoot Devante. Mr. Crockett testified that Mr. Jefferson "must have thought … [Devante] was going for a gun" in the black duffle bag. Nonetheless, when asked if he ever saw Devante with a gun on the day of the shooting, Mr. Crockett responded in the negative.

A younger cousin of Mr. Jefferson and Devante, Brandon Allen (hereinafter "Brandon"), also testified for the defense.[4] Brandon testified that after exiting the party bus, Devante accused him of making vulgar statements about Mr. Jefferson's deceased mother. He stated that Devante then slapped him in the face and the two began to fight. Brandon explained that Mr. Jefferson got involved to "break-up" the altercation. Brandon further testified that Mr. Jefferson and Devante were then involved in two subsequent physical altercations as a result of Devante slapping Brandon in the face. When asked if he saw Devante with a gun on the day of the shooting, Brandon responded in the negative.

---

[4] Brandon also testified by Zoom.

**<u>Assignments of Error</u>**

On appeal, Mr. Jefferson asserts the following two assignments of error:

1.  The evidence is insufficient to support Wilbert D. Jefferson, Jr.'s convictions for manslaughter (Count 1); felon in possession of a firearm (Count 3); and obstruction of justice (Count 4); [and]

2.  The Court should consider the merits of Mr. Jefferson's aforementioned claims and deny the pending Unopposed Motion to Dismiss Appeal Without Prejudice; in the alternative, if the Court concludes it lacks jurisdiction, the Court should dismiss the appeal without prejudice in order to allow Mr. Jefferson to pursue an out-of-time appeal in the district court in accordance with *State v. Counterman*.

Prior to addressing Mr. Jefferson's first assignment of error, we address his second assignment of error as it relates to the motion to dismiss filed in this Court by the State.

*Assignment of Error Number Two*

On December 27, 2024, the State filed a motion to dismiss Mr. Jefferson's appeal. This Court ordered that the State's motion to dismiss be determined in conjunction with the merits of Mr. Jefferson's appeal. The State argues that Mr. Jefferson's motion for appeal was filed outside the thirty-day deadline set forth in La. C.Cr.P. art. 914.[5] It further argues that this Court does not have jurisdiction to consider the merits of the appeal. Conversely, Mr. Jefferson's second assignment of error contends that although the motion for appeal was untimely filed, the record fails to indicate that he intentionally waived his constitutional right to appeal. We agree.

"The motion for an appeal must be made no later than:…[t]hirty days after the rendition of the judgment or ruling from which the appeal is taken." La. C.Cr.P. art. 914(B)(1). "The appropriate procedural remedy for a defendant seeking to

---

[5] La. C.Cr.P. art. 914 sets forth the delays for filing a motion for appeal.

exercise his right to appeal after his conviction and sentence become final is a timely-filed application for post-conviction relief seeking an out-of-time appeal pursuant to La. C.Cr.P. art[s]. 924-930.[8]." *State v. Harrison*, 2017-0054, pp. 28-29 (La.App. 4 Cir. 3/21/18), 239 So.3d 406, 424 (citation omitted); *State v. Counterman*, 475 So.2d 336, 339 (La. 1985). "There is a constitutional right to appeal (or to other review on the record) in criminal cases in Louisiana when the defendant is to be subjected to imprisonment or fine." *Counterman*, 475 So.2d at 339 (citing La. Const. art. I § 19 (1974)). "[T]he court arguably has the inherent authority to grant the limited relief of an out-of-time appeal (as opposed to the usual relief of a new trial in successful post-conviction applications)." *Counterman*, 475 So.2d at 340. There is no "precise statutory authority for providing relief to convicts who have suffered a deprivation of their right to appeal." *Harrison*, 2017-0054, p. 29, 239 So.3d at 424 (citation omitted). Nonetheless, in some cases when "[t]here is no indication in the record that [a] defendant ever intended to waive his constitutionally protected right to appeal his convictions and sentences . . . he would be entitled to an out-of-time appeal… ." *Id*.

On January 4, 2024, the district court sentenced Mr. Jefferson and his motion for appeal was filed on August 29, 2024. It is undisputed that Mr. Jefferson's motion was filed outside of the thirty-day deadline set forth in La. C.Cr.P. art. 914. Nonetheless, his motion for appeal was filed within the two-year period set forth in La. C.Cr.P. arts. 924-930.8 for the filing of an application for post-conviction relief. Furthermore, our review of the record does not suggest that Mr. Jefferson intended to waive his constitutionally protected right to appeal his convictions and sentences. *Harrison*, 2017-0054, p. 29, 239 So.3d at 424. Our

jurisprudence affords great latitude to an appellate court's consideration of an out-of-time appeal. *See Counterman*, 475 So.2d at 339; *Harrison*, 2017-0054, p. 29, 239 So.3d at 424. We therefore find that delaying this matter to remand to the district court "would only prolong the delay without serving any useful purpose." *State v. S.J.I.*, 2006-2649, p. 1 (La. 6/22/07), 959 So.2d 483; *Harrison*, 2017-0054, p. 29, 239 So.3d at 424 (finding that remanding such a matter would be a waste of time and judicial resources). As such, we will consider the merits of Mr. Jefferson's appeal and the State's motion to dismiss is denied.

***Assignment of Error Number One***

Mr. Jefferson's first assignment of error maintains that the evidence presented by the State was insufficient to support his manslaughter, felon in possession of a firearm and obstruction of justice convictions.

In reviewing a sufficiency of evidence claim, this Court is required to determine whether the evidence is sufficient to convince a rational trier of fact that all the elements of the crime have been proven beyond a reasonable doubt, when viewed in a light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Lightfoot,* 2018-0336, p. 4 (La.App. 4 Cir. 12/12/18), 318 So.3d 1033, 1038. As an appellate court, we must review the record as a whole just as the trier of fact would do. *State v. Wilson*, 2022-0346, p. 4 (La.App. 4 Cir. 12/9/22), 353 So.3d 389, 393 (citation omitted). "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Huckabay*, 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111 (quoting *State v. Smith*, 600 So.2d 1319, 1324 (La. 1992)). If conflicting testimony is presented, the conflict of testimony regarding factual matters affects the weight

9

of evidence, not its sufficiency. *State v. Sterling*, 2024-0160, p. 8 (La.App. 4 Cir. 7/17/24), 398 So.3d 80, 88 (citation omitted). "[S]uch a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness." *Wilson*, 2022-0346, p. 5, 353 So.3d at 393 (quoting *State v. McGinnis*, 2019-0381, p. 11 (La.App. 4 Cir. 3/11/20), 364 So.3d 172, 180). If believed by the trier of fact, the testimony of a single witness is sufficient to support a conviction absent internal contradiction or a conflict with physical evidence. *State v. Marshall*, 2004-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369 (citation omitted). As such, "[c]redibility determinations are entitled to great weight and will not be disturbed unless contrary to the evidence." *State v. Rainey*, 2015-0892, p. 9 (La.App. 4 Cir. 1/27/16), 189 So.3d 439, 444 (citation omitted). With these principles in mind, we now address each of Mr. Jefferson's sufficiency of evidence arguments as it relates to his manslaughter, felon in possession of a firearm and obstruction of justice convictions.

### Manslaughter and Self-Defense

Mr. Jefferson asserts that the evidence is insufficient to support his manslaughter conviction and that the State failed to prove that he did not act in self-defense.

The State charged Mr. Jefferson with second degree murder, a violation of La R.S. 14:30.1, which is defined as "the killing of a human being…[w]hen the offender has a specific intent to kill or to inflict great bodily harm." However, the jury found Mr. Jefferson guilty of the responsive verdict of manslaughter, a violation of La. R.S. 14:31, which defines manslaughter as:

> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood

10

immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed… .

La. R.S. 14:31(A)(1). "'Sudden passion' and 'heat of blood' are mitigating factors, which demonstrate less culpability than if a murder is committed without those factors." *State v. Bethley*, 2022-0849, p. 8 (La.App. 4 Cir. 6/21/23), 368 So.3d 1148, 1155, *writ denied*, 2023-00965, p. 1 (La. 1/17/24), 377 So.3d 242, 243 (citation omitted). "A homicide is justifiable . . . [w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1). "In a homicide case in which the defendant asserts he acted in self-defense, the State has the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense." *Bethley*, 2022-0849, p. 5, 368 So.3d at 1154 (quoting *State v. Kirk*, 2011-1218, pp 6-7 (La.App. 4 Cir. 8/8/12), 98 So.3d 934, 939-40) (citation omitted). "A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." La. R.S. 14:21.

Mr. Jefferson argues that Mr. Crockett's testimony proves that he acted in self-defense. Three witnesses for the State and two defense witnesses testified that Mr. Jefferson and Devante were in three separate physical altercations on the day of the shooting. Mr. Crockett, Brandon, Keyoka, Destiny and Taiteona testified that both Devante and Mr. Jefferson were consuming alcohol and engaging in

physical and verbal altercations throughout the day. Keyoka, Destiny and Taiteona acknowledged that Mr. Jefferson and Devante had a close bond and that the pair often engaged in physical fights. While Keyoka, Destiny and Taiteona maintained that Mr. Jefferson began the fights, Brandon's testimony suggests that Devante initiated the first fight when he slapped Brandon in the face, forcing Mr. Jefferson to come to his defense. Mr. Crockett also testified that the first fight began when Mr. Jefferson attempted to defend Brandon. Nonetheless, the collective testimony supports the jury's finding that Devante and Mr. Jefferson were engaged in "sudden passion" and/or "heat of blood" altercations "immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31(A)(1).

As stated above, "a homicide is justifiable…[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1). The State bears the burden of proof that Mr. Jefferson was not acting in self-defense when he shot Devante. There is no physical evidence or testimony to indicate that Devante had a weapon when Mr. Jefferson shot him. *See* La. R.S. 14:21. Mr. Crockett was the sole witness to maintain that Devante was reaching towards a black bag that could have contained a gun, prior to Mr. Jefferson shooting Devante. Moreover, the testimony of Keyoka, Destiny and Taiteona suggests that Mr. Jefferson was the aggressor, initiating the fights. Taiteona testified that Devante's back was to Mr. Jefferson when he was shot and Dr. Gardner's examination supports that testimony. While Mr. Jefferson left the residence after the third fight, the testimony indicates he quickly returned and shot Devante and Destiny. "The determination of credibility

12

is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless contrary to the evidence." *State v. Mahogany*, 2017-0377, p. 18 (La.App. 4 Cir. 7/26/17), 225 So.3d 489, 503 (citation omitted). "Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness' testimony, if believed by the fact finder, is sufficient to support a factual conclusion." *Id*. (quoting *State v. Rapp*, 2014-0633, pp. 6-7 (La.App. 4 Cir. 2/18/15), 161 So.3d 103, 108 (citation omitted). Mr. Jefferson retreated after the last altercation but quickly returned to the scene and shot Devante. Based on the evidence, a rational juror could have concluded that the State satisfied its burden of proof that Mr. Jefferson was the aggressor and did not act in self-defense. We therefore find the evidence sufficient to support Mr. Jefferson's manslaughter conviction.

**Felon in Possession of a Firearm**

Mr. Jefferson next contends that the evidence is insufficient to support his conviction for felon in possession of a firearm. He asserts that he was justified in taking possession of the gun to defend himself.

Mr. Jefferson was convicted for violating La. R.S. 14:95.1, which provides that it is unlawful for any persons who has been convicted of a felony to possess a firearm or carry a concealed weapon. In order to obtain a conviction for felon in possession of a firearm, the State must prove that the defendant: "(1) possessed a firearm; (2) was previously convicted of an enumerated felony; (3) possessed the firearm within ten years of the previous conviction; [and] (4) had the general intent to commit the crime." *State v. Gabriel*, 2018-0169, p. 9 (La.App. 4 Cir. 12/26/18), 262 So.3d 345, 351 (citation omitted). However, "[w]hen a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such

13

danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. In such [a] situation justification is a defense to the charge of felon in possession of a firearm." *State v. Blache*, 480 So.2d 304, 308 (La. 1985).

As we have concluded above, the evidence is insufficient to prove that Mr. Jefferson was acting in self-defense. Keyoka, Destiny, Taiteona, Mr. Crockett and Brandon testified that they did not see Devante with a gun on the day of the shooting. Furthermore, Dr. Gardner's testimony reflects that Devante suffered multiple gunshot wounds which entered through his back. Mr. Jefferson failed to submit any evidence to indicate that he was in imminent peril or in danger of receiving great bodily harm when he took possession of his brother's gun. Thus, he is unable to avail himself of this defense. The collective testimony at trial reveals that Mr. Jefferson possessed a gun and shot Devante and Destiny. Additionally, the State submitted evidence at trial to establish Mr. Jefferson's 2013 felony conviction of aggravated robbery, with a deadly weapon, from Texas. Viewing the evidence, in a light most favorable to the State, a rational juror could have concluded that Mr. Jefferson was guilty of the crime of felon in possession of a firearm. We therefore find the evidence sufficient to support his conviction for felon in possession of a firearm.

**Obstruction of Justice**

Lastly, Mr. Jefferson argues the evidence is insufficient to convict him of obstruction of justice because the State failed to prove that he (1) removed the gun from the residence and/or (2) disposed of the gun. Obstruction of justice is defined in La. R.S. 14:130.1 as follows:

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or U.S. law enforcement officers … .

La. R.S. 14:130.1(A)(1)(a). "Specific intent [to commit obstruction of justice] need not be proven as fact but may be inferred from the circumstances of the transaction and the actions of defendant." *Bethley*, 2022-0849, p. 9, 368 So.3d at 1156 (quoting *State v. Harvey*, 2021-0730, p. 10 (La.App. 4 Cir. 5/25/22), 345 So.3d 1043, 1050).

Mr. Jefferson contends there is no evidence to show that he removed the gun from the crime scene. However, the evidence and testimony indicate that Mr. Jefferson took possession of a gun, shot Devante and Destiny and fled the scene. Although Mr. Jefferson stated that he did not remember possessing a firearm, four witnesses testified that Mr. Jefferson had a firearm and fled after shooting Devante and Destiny. It is therefore reasonable to infer that Mr. Jefferson fled the scene, with the firearm, knowing that he might be the subject of a criminal investigation. We find that a rational trier of fact could have found that he obstructed justice by tampering with evidence. *Bethley*, 2022-0849, p. 10, 368 So.3d at 1156 (citing *State v. Powell*, 2015-0218, p. 11 (La.App. 4 Cir. 10/28/15), 179 So.3d 721, 728) (finding that removal of a weapon from the scene of the shooting is sufficient to

support an obstruction of justice conviction). The evidence is therefore sufficient to support Mr. Jefferson's obstruction of justice conviction.

For the reasons more fully articulated above, we find the State presented sufficient evidence to support the jury's findings of guilt for the crimes of manslaughter, felon in possession of a firearm and obstruction of justice. Accordingly, Mr. Jefferson's first assignment of error is without merit.

## Errors Patent

The record reveals one error patent. *See* La. C.Cr.P. art. 920. The jury found Mr. Jefferson guilty of felon in possession of a firearm, a violation of La. R.S. 14:95.1, which provides in pertinent part:

> Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.

La. R.S. 14:95.1(B)(1). In imposing Mr. Jefferson's sentence – as it relates to his conviction for felon in possession of a firearm – the district court failed to include the statutorily mandated fine in accordance with La. R.S. 14:95.1(B)(1). Rather, the district court only imposed a twenty-year sentence. When a district court fails to impose a statutorily mandated fine, this Court shall remand the case to the district court. *State v. Williams*, 2024-0105, p. 8 (La.App. 4 Cir. 10/9/2024), 400 So.3d 1194, 1199 (citation omitted). Accordingly, we remand this matter to the district court for the sole purpose of imposing the statutorily mandated fine for Mr. Jefferson's sentence related to his conviction for felon in possession of a firearm.

## Decree

Based on the foregoing, we deny the State's motion to dismiss the appeal and affirm Mr. Jefferson's convictions. However, this matter is remanded for the

sole purpose of imposing the statutorily mandated fine for Mr. Jefferson's conviction for felon in possession of a firearm. The remaining three sentences imposed by the district court are affirmed.

**MOTION TO DISMISS DENIED;**
**CONVICTIONS AFFIRMED;**
**SENTENCES AFFIRMED IN PART;**
**REMANDED IN PART FOR RE-SENTENCING**